NATHAN T. SPRAGUE *vs.* WILLIAM C. FLETCHER.

May Term, 1896.

Present: ROSS, C. J., ROWELL, TYLER, MUNSON, and START, JJ.

*Taxes—Distraint of Bank Stock—No. 17, Acts of 1892, Unconstitutional.*

The defendant, as tax collector, distrained and sold the plaintiff's bank stock upon an illegal tax, making regular return of his doings, and the plaintiff bid it in and paid for it. No transfer was made upon the books of the bank because the shares already stood in the plaintiff's name. *Held,* that the invasion of the plaintiff's right was complete.

No. 17, Acts of 1892, denies to non-residents of Vermont rights which are allowed to residents, under the same circumstances, in respect to deductions from taxable personal property by reason of debts owed by the tax-payer, and therein conflicts with Art. 4, § 2, of the Federal Constitution, securing to citizens of each state "all the privileges and immunities of citizens in the several states."

It was the plaintiff's duty in claiming deductions for debts, to furnish by his inventory information which would enable the listers to determine whether he was entitled thereto. But having fulfilled this duty to the extent of showing that such indebtedness exceeded his entire personal estate, his right could not be prejudiced by the fact that he insufficiently designated certain other debts, nor by his returning property as taxable which he might have returned as exempt.

TROVER AND CASE for the sale by the defendant, as tax collector, of the plaintiff's bank stock to satisfy taxes alleged to be illegal. Trial by jury at the March Term, 1895, Rutland County, *Thompson,* J., presiding. Verdict for the plaintiff directed, and judgment thereon. The defendant excepted.

*Stewart & Wilds* and *J. C. Baker* for the defendant.

The legislature was justified in discriminating against non-residents in respect to the right to deduct debts owing, because of the inability of this State to reach that portion of the personal estate of non-residents situate without the State, and because of the inability of listers to verify the

statements of tax payers touching matters outside the State. The presumption is that all such equities are adjusted in the place of the tax payer's domicile. *People* v. *Barker*, 147 N. Y. 39; *People* v. *Commissioners of Taxes*, 23 N. Y. 224.

The plaintiff was not entitled to deduction for debts owing, because he failed to answer truly interrogatory 19 in his inventory.

The levy upon and sale of the plaintiff's bank stock was no invasion of his legal rights. There was no transfer of the stock. Indeed this would have been futile, for the purchaser was already the owner; but this shows that the legal infraction of the plaintiff's rights was not fully matured. If the levy and sale were void it conferred no title, and the plaintiff's remedy was an action for breach of the implied warranty of title.

*C. A. Prouty* for the plaintiff.

It has once been determined in this case that the plaintiff has a cause of action upon the facts proved. *Sprague* v. *Fletcher*, 67 Vt. 46.

The listers, in disallowing the plaintiff's offset, relied upon No. 17, Acts of 1892, which provides that no offset shall be allowed a non-resident doing business in Vermont, except in certain specified instances not applicable to the plaintiff. This statute manifestly discriminates between a resident and non-resident and is void, for that reason, under Art. 4, § 2, of the Federal Constitution. That section has uniformly been held to secure non-resident citizens from every kind of discrimination in the matter of taxation. *Ward* v. *Maryland*, 12 Wall. 418; *Wiley* v. *Parmer*, 14 Ala. 627; *Crandall* v. *State*, 10 Conn. 339: *Bliss' Petition*, 63 N. H. 135; *State* v. *Lancaster*, 63 N. H. 267; *Fecheimer* v. *Louisville*, 84 Ky. 306; *McGuire* v. *Parker*, 32 La. An. 832; *Davis* v. *Pierse*, 7 Minn. 13; *Oliver* v. *Washington Mills*, 11 Allen, 268, 280; Cooley, Taxation, 99; *Railroad Tax Cases*, 13 Fed. Rep. 722, 736; *Exchange Bank* v. *Hines*, 3 Ohio St. 1; *People* v.

*Weaver*, 100 U. S. 539; *Supervisors* v. *Stanley*, 105 U. S. 305, 316.

START, J.　The evidence tended to show, that the defendant had authority to collect several taxes that were assessed against the plaintiff on the grand list of the town of Brandon for the year 1893; that he duly distrained, posted and sold the bank stock declared for, in accordance with the requirements of No. 11 of the Acts of 1882; that the plaintiff purchased the same at the official sale thereof and paid therefor; that the defendant made due return of his proceedings, and delivered duly attested copies thereof to the clerk and cashier of the bank issuing the stock; and that no transfer of the stock was made upon the books of the bank and no certificate of transfer issued. At the close of the evidence, the defendant insisted that an invasion, by the defendant, of the plaintiff's right in the stock had not been shown and, upon this ground, moved for a verdict. This motion was denied, and the defendant excepted. The defendant now insists that the motion should have been granted, because the stock was not transferred upon the books of the bank and a certificate of transfer issued to the plaintiff. We think this motion was properly denied.

When the defendant delivered copies of his tax warrants, with his return thereon duly attested, in accordance with the requirements of No. 11 of the Acts of 1882, it became the duty of the proper officers of the bank to transfer the stock upon the books of the bank and issue a certificate of transfer thereof to the purchaser named in the defendant's return. This was not done, because the stock then stood in the name of the purchaser upon the books of the bank. There was no occasion for such transfer and issue of a certificate. The defendant's return showed that the plaintiff became the purchaser at the official sale of the stock, and his title was perfect without such transfer and certificate. The defendant could not transfer the stock upon the books of the bank or issue a certificate of transfer

thereof. When he had distrained it, posted it for sale at public auction, offered it for sale to the highest bidder, sold it to the plaintiff because he was such bidder and paid therefor, and made return of his doings as the law requires, he had invaded the plaintiff's right in the stock, and done all he could to divest the plaintiff of all title to it, except the title acquired by its purchase from him. He had compelled the plaintiff to become the purchaser thereof or submit to having his stock sold to a stranger, transferred upon the books of the bank and a certificate of transfer thereof issued, which would place it beyond his reach or control for a time, if not permanently, or to institute legal proceedings to prevent such sale and transfer thereof. The plaintiff has paid the defendant for the stock. He has done this, not as a volunteer, but because the defendant, in his official capacity, by invoking the aid of the law, has compelled him to do so, or stay the hand of the defendant by resort to equity for an injunction, or suffer his stock to pass out of his control to an extent that would for a time, at least, deprive him of dividends thereon and preclude him from voting and participating in the business and management of the affairs of the bank to the extent that he otherwise would; and we think this was such an invasion of the plaintiff's right in the stock as was held actionable when this case was before us on demurrer to the declaration. *Sprague* v. *Fletcher*, 67 Vt. 46.

The plaintiff, whose domicile was in Brooklyn, New York, as the jury have found, claimed to be domiciled in Brandon, Vermont, and duly returned to the listers of Brandon an inventory of his personal estate, and therein claimed a deduction for specified debts that he was owing, to the full amount of the appraised value of his personal estate. The listers treated him as a non-resident and, in accordance with the provisions of No. 17 of the Acts of 1892, refused to make the deduction to the extent claimed, and placed his personal estate in the list at sixty-five thousand six hundred and forty dollars; and this sum entered into the list on

which the taxes in question were assessed. The court below held that this statute was unconstitutional and ordered a verdict for the plaintiff, to which the defendant excepted.

Section 12 of No. 2 of the Acts of 1882, provides that listers, in making up the lists of the several tax-payers, shall deduct from the appraised value of personal estate a sum equal to the excess, if any, of debts owing by such tax-payer over the aggregate amount of his United States bonds and other stocks and bonds exempt from taxation by the laws of this State, and the amount of his deposits in all the savings banks, savings institutions and trust companies in this State or elsewhere, and shall take one per cent. of the balance as the list of the personal estate of such tax-payer. This statute is general and was applicable to lists of non-resident as well as resident tax-payers, until the act under which the listers proceeded was passed; and it would have been the duty of the listers to have proceeded under it, in making up the plaintiff's list, but for the later statute, which was enacted after the statute above cited had been in force some ten years, and provides that no deduction shall be made for debts owing by a corporation or person residing without this State and doing business within this State, except such as were contracted by reason of business done within this State, and which are in excess of cash on hand within and without this State, and sums due without this State by reason of business done within this State. Had the listers, in making up the plaintiff's list, proceeded under the statute first enacted and made the deductions thereby authorized, no sum for personal estate would have remained for taxation; and the plaintiff would have been exempt from taxation to that extent.

This statute remains in force, and, under it, a resident of this State is entitled to a deduction from the appraised value of his personal estate equal to all debts owing by him in excess of the value of his non-taxable bonds, stocks and

deposits; and, if these debts equal or exceed the appraised value of his personal estate, his personal estate is exempt from taxation. Under the later statute, this right, which had been for ten years extended to non-residents doing business in this State, is taken away; and the right remains only to a resident of this State. A non-resident doing business in this State is allowed a deduction from the appraised value of his personal estate for only such debts as were contracted by reason of business done in this State, and these are diminished by sums due to him without this State by reason of business done in this State, and cash on hand within and without this State that may be the proceeds and accumulations of business done entirely without this State. This statute provides only for lists of non-residents, and, because the plaintiff was a non-resident, the listers proceeded under it and denied the claimed deductions in making his list, and, in so doing, denied to him an immunity from taxation that is given to our own citizens. If the listers had made the deduction from the valuation of the plaintiff's personal estate that is allowed to residents, they would have exempted the plaintiff's entire personal estate from taxation. By proceeding under the statute relating to non-residents, the listers have assessed the plaintiff for property valued at sixty-five thousand six hundred and forty dollars that they would have exempted from taxation if the plaintiff had been a resident of this State. The effect of the statute is to exempt from taxation all the personal estate of a resident of this State, except the excess in value of such estate over debts owing in excess of non-taxable bonds, stocks and deposits, and to tax a non-resident's property, circumstanced the same, except that the owner resides out of the State; and, in so far as it does this, it provides an immunity from taxation to a resident that it denies to a non-resident, discriminates in favor of a resident and against a non-resident, and denies to citizens of other states an immunity given to our own citizens. Such

discrimination and denial is clearly forbidden by the consti-
tution of the United States, which provides that the citizens
of each state shall be entitled to all the privileges and
immunities of citizens of the several states.    Art. 4, § 2,
U. S. Constitution.

When a non-resident observes laws that are enacted with
a view to regulate the conduct and action of our citizens, it
is his right and privilege to have his property, situate in
this State, protected under our laws as effectually as the
property of a resident; and, if his property is subject
to taxation, burdens and diminutions that a resident's
property, circumstanced the same, is exempt from, his
property is not thus protected, and he is denied an
immunity under our law that is given to our own
citizens.   A non-resident cannot be taxed higher for per-
sonal property, situate in this State, than a resident owning
like property under like circumstances, nor can he be com-
pelled to pay taxes on such property, if like property, cir-
cumstanced the same, is exempt from taxation in the hands
of a resident.   A non-resident conforming to our statute
relating to taxation is entitled to deductions from the
appraised value of his personal estate, situate in this State,
for debts owing, as favorable as those given to a resident;
and he is entitled to a mode of classification and of deter-
mination as to what sum his property shall be placed in the
list at, for the purpose of taxation, that does not subject
him to taxation, when he would be exempt therefrom if he
were a resident of this State, owning like property.

Under our system of taxation, when a non-resident's
property is placed in the grand list, it is there for all pur-
poses of taxation that the resident's property is subject to
when placed in the list, and to the same extent.   The list is
increased by denying deductions and exemptions and dimin-
ished by allowing them.   The only opportunity to discrimi-
nate is in making up the list, as the rate of taxation, or per-
centage of the grand list, for residents and non-residents is

the same; therefore, discrimination should be avoided in the method of making up the list for taxation. A mode of making up the grand list of a non-resident, or a system of classifying, that results in placing his property in the grand list when a resident's property, under like circumstances is not, or is placed at a lower valuation by reason of a deduction from its appraised value that is not allowed to a non-resident, subjects the non-resident to a greater rate of taxation, and to the payment of taxes that are not exacted of a resident.

In *People* v. *Weaver*, 100 U. S. 539, it is held that a statute of New York, which permits a debtor to deduct the amount of his debts from the valuation of all his property, including moneyed capital, except his bank shares, taxes those shares at a greater rate than other moneyed capital, and is therefore in conflict with so much of the National Banking Act as provides that taxation on shares of national banks shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individuals, and void as to the shares of national banks. Mr. Justice Miller, in delivering the opinion of the court, said: "It cannot be disputed—it is not disputed here—nor is it denied in the opinion of the state court, that the effect of the state law is to permit a citizen of New York, who has money capital invested otherwise than in banks, to deduct from that capital the sum of all his debts, leaving the remainder alone subject to taxation, while he whose money is invested in shares of bank stock can have no such deductions. Nor can it be denied that, inasmuch as nearly all the banks in that state and in all others are national banks, that the owner of such shares who owes debts is subjected to a heavier tax on account of those shares than the owner of moneyed capital otherwise invested, who also is in debt, because the latter can diminish the amount of his tax by the amount of his indebtedness, while the former cannot. That this works a discrimination against the national bank

shares as subjects of taxation, unfavorable to the own-
ers of such shares, is also free from doubt. The sec-
tion to be construed begins by declaring that these shares
may be 'included in the valuation of the personal property
of the owner, in assessing taxes imposed by authority
of the state within which the association is located.'
This *valuation*, then, is part of the *assessment* of taxes.
It is a necessary part of every assessment of taxes.
which is governed by a ratio or percentage. There
can be no rate or percentage without a valuation.
This taxation, says the act, shall not be at a
greater rate than is assessed on other moneyed capital.
What is it that shall not be greater? The answer is,
taxation. In what respect shall it be not greater than the
*rate assessed* upon other capital? We see that Congress
had in its mind an *assessment*, a *rate* of assessment, and a
*valuation;* and, taking all of these together, the taxation
on these shares was not to be greater than on all other
moneyed capital. We are, therefore, of the opinion
that the statute of New York, as construed by the Court of
Appeals, in refusing to the plaintiff the same deduction for
debts due by him, from the valuation of his shares of
national bank stock, that it allows to those who have
moneyed capital otherwise invested, is in conflict with
the act of Congress."

By our statute, the method of ascertaining at what sum,
if any, the personal estate of a non-resident shall be placed
in the list for general taxation is so radically different from
the method of ascertaining like facts for the purposes of a
resident's list that it subjects the non-resident, doing busi-
ness in this State and having personal estate situate in this
State and owing debts not contracted by reason of business
done in this State, to taxation that he would be exempt
from as a resident of this State, or to a higher rate of taxa-
tion. By making the plaintiff's list under the statute in
question instead of the statute relating to lists of residents,

he was denied an immunity from taxation given to our own citizens—an immunity that he claimed and, by his inventory, placed himself in a position to be heard in respect to and insist upon. The legislature may have power to provide a method for making up the grand list of a non-resident that differs from the method of making up the list of a resident, and to classify property for the purposes of taxation, if the purpose of the different method and classification is to secure uniformity of taxation and they have a tendency to secure it; but it has not the power to deny to a non-resident a deduction which is allowed a resident, that has the effect to place his property in the list for taxation and exempt like property of a resident, circumstanced the same, except that it is owned by a resident. Such legislation denies to citizens of other states privileges and immunities of citizens of this State. We do not give to the words, "privileges and immunities," the effect and meaning intended by the framers of the constitution, nor the meaning they fairly import, unless we give to the citizens of all the states the same benefits and advantages of acquiring and holding property and having the same protected as we give our own citizens. If we subject their property to taxation and burdens from which the property of our citizens is exempt, we discriminate against them in a manner forbidden by the Federal Constitution.

In *Ward* v. *Maryland*, 12 Wall. 418, the state imposed a higher license tax upon a non-resident than upon a resident for the privilege of selling goods by sample, and it was held that the act was void under the 2nd section of the 4th article of the Federal Constitution. Mr. Justice Clifford, in speaking of "privileges and immunities," says: "Beyond doubt those words are words of very comprehensive meaning, but it will be sufficient to say that the clause plainly and unmistakenly secures and protects the right of a citizen of one state to pass into any other state of the Union for the purpose of engaging in lawful commerce, trade or business,

without molestation; to acquire personal property; to take and hold real estate; to maintain actions in the courts of the state; and to be exempt from any higher taxes or excises than are imposed by the state upon its own citizens. Comprehensive as the power of the states is to lay and collect taxes and excises, it is, nevertheless, clear, in the judgment of the court, that the power cannot be exercised to any extent in a manner forbidden by the constitution; and, inasmuch as the constitution provides that the citizens of each state shall be entitled to all the privileges and immunities of citizens of the several states, it follows that the defendant might lawfully sell, or offer, or expose for sale within the district, described in the indictment, any goods which the permanent residents of the state might sell, or offer or expose for sale in that district, without being subjected to any higher tax or excise than that exacted by law of such permanent residents. Important as these provisions have been supposed to be, still it is clear that they would become comparatively valueless if it should be held that each state possesses the power in laying taxes for the support of its own government to discriminate against the citizens of every other state of the Union."

In *Wiley* v. *Parmer*, 14 Ala. 627, it is held that the statute of the state, taxing the slaves of a non-resident at double the amount at which those of a resident were taxed, was unconstitutional.

In *Bliss' Petition*, 63 N. H. 135, it is held that a state cannot refuse a peddler's license to a citizen of another state, asked for upon the same terms that it grants licenses to its own citizens. The court said: "The state power of taxation cannot discriminate against the citizens of other states. The equality of privileges and immunities guaranteed by the federal constitution to the citizens of each state exempts them from any higher taxes than the state imposes upon her own citizens."

In *State* v. *Lancaster*, 63 N. H. 267, it is held that an act requiring non-residents to procure a license for the sale of trees and shrubs which residents of the state are permitted to sell without license, is in contravention of the federal constitution.

In *McGuire* v. *Parker*, 32 La. Ann. 832, it is held that a state law, requiring the payment of twenty-five dollars per month by every non-resident selling goods by sample as a traveling salesman, is unconstitutional.

In *Oliver* v. *Washington Mills*, 11 Allen, 280, it is held that a tax upon the shares of non-resident and not upon those of resident stockholders in domestic corporations is void as a discrimination against the citizens of another state. In the course of the opinion, the court said: "We are unable to see how it can be supported consistently with that provision of the constitution of the United States which secures to the citizens of each state all the privileges and immunities of citizens of the several states. * * * * It is obvious that the power of a state to impose different and greater burdens or impositions on the property of citizens of other states than on the same property belonging to its own subjects would directly conflict with this constitutional provision. By exempting its own citizens from a tax or excise to which citizens of other states were subject, the former would enjoy immunity of which the latter would be deprived. Such has been the judicial interpretation of this clause of the constitution by courts of justice in which the question has arisen."

In *Town of Farmington* v. *Downing*, decided by the Supreme Court of New Hampshire in 1893, reported in the 30th Atl. Rep. 345, the plaintiff assessed a tax on fifty shares of the capital stock of the Farmington National Bank, located in the plaintiff town. The defendant was a resident of Massachusetts and claimed that the shares were not liable to taxation because of his indebtedness. The court, in delivering the opinion, said: "For taxable

purposes, Downing's national bank stock is to be treated as money on hand or at interest, and, if he had been a resident of this state, the excess only of the value of the stock over his interest bearing indebtedness would have been taxable, and as the value of the stock did not exceed the amount of his indebtedness it would not have been taxable. The taxable value of the shares is not determined by the residence of the owner. If the stock was not taxable to Downing as a citizen of New Hampshire, it was not taxable to him as a citizen of Massachusetts. The imposition of a higher tax upon him as a citizen of Massachusetts than he would be obliged to pay as a citizen of this state would be in conflict with the provision of the Federal Constitution, that the citizens of each state shall be entitled to the privileges and immunities of citizens of the several states."

In *People ex rel. Thurber, Whyland Company* v. *Barker*, 141 N. Y. 118, relied upon by the defendant, it is held that the New York statute does not authorize a deduction of debts from sums invested in business in that state by non-residents. In this holding, the court only gave a construction to the New York statute, and did not consider or decide whether the statute denied to a non-resident an immunity guaranteed by the Federal Constitution; therefore, the case is not an authority upon the question we have under consideration. The New York statute only provides that sums invested by non-residents in business shall be taxed, while our statute subjects all property of a non-resident, situate in this State, to taxation to the same extent that a resident's property is taxed, and denies a deduction to a non-resident that is given to a resident.

The plaintiff claimed to be a resident of this State and sought to place himself, for the purposes of taxation, upon the same ground that a resident is placed. By his inventory, he returned his property for taxation to the same extent he would have been required to do had he been a resident of this State. He returned his chattels, cash on hand, notes,

mortgages, leases, sums due to him from parties residing within and without this State, taxable and non-taxable bonds, stocks, etc. He answered all interrogatories in the inventory and complied with all laws respecting taxation that are applicable to residents, and insisted upon the same immunity from taxation that our statute gives to them. It was his right to have the indebtedness set forth in his inventory considered by the listers; and, if found *bona fide*, and that he had complied with the law that a resident must comply with to be entitled to a deduction for debts owing, he was entitled to have the excess of such indebtedness over his non-taxable bonds, stocks and deposits deducted from the appraised value of his personal estate. Had this been done, no sum for personal estate would have remained for taxation, and his personal estate, situate in this State, would have been exempt from taxation. This right was denied him. The listers refused to consider his indebtedness and denied this exemption from taxation because he was a non-resident, and, in so doing, denied to him an immunity from taxation that is given by our statute to residents of this State. This was the denial of a right guaranteed by the Federal Constitution, and, because of this denial, the assessments against him must be held for naught.

The defendant insists that the listers properly refused the deduction claimed for debts owing, because the plaintiff did not give sufficient information as to the residence of the parties to whom he was indebted, and because he gave his stock in the Sprague National Bank in answer to Int. 14, when he should have given it in answer to Int. 19. It was clearly the duty of the plaintiff, if he claimed deductions for debts owing, to furnish, by his inventory, such information as would enable the listers to determine whether he was entitled to such deductions; and we think he has done so. He gave the residence of persons to whom he was indebted with sufficient definiteness, and the amount owing to each to an amount exceeding the value of his taxable and non-

taxable personal estate. This information, if the indebtedness was *bona fide*, was sufficient to enable the listers to determine that his indebtedness exceeded his entire personal estate by many thousand dollars; and the fact that he named other persons to whom he was indebted, without giving the places of their residence, did not justify the listers in refusing to consider his indebtedness to parties whose residence was given. Int. 19 of the inventory was as follows: "What amount of stocks and bonds, claimed to be exempt from taxation under the laws of this State, was owned or held by you on the first day of April, 1893?" To this interrogatory, the plaintiff answered "None." Int. 14 was as follows: "What stock in banks, trust companies and other corporations in this State (except what is exempt in manufacturing and railroad corporations in this State) was owned or held by you on the first day of April, 1893?" In answer to this interrogatory, the plaintiff gave in his stock in the Sprague National Bank as taxable property, instead of claiming it as exempt in answer to Int. 19, as he might have done if the bank issuing the stock was located without this State; but no one was wronged by this. The listers had no reason to complain, and they did not. They did not deny a deduction because the inventory was not full and complete, but because they adjudged that the plaintiff was a non-resident. They knew from the inventory that the plaintiff had this stock. It will be noticed that Int. 19 called upon the plaintiff to state what amount of stocks he *claimed to be exempt from taxation under the laws of this State.* He was under no duty to *claim* that his bank stock was exempt, when he had returned it as taxable property in answer to Int. 14. It does not appear from the inventory where the bank in which he owned stock was located. If it was located in this State, it was his duty to return it as taxable property in answer to Int. 14. As the plaintiff was circumstanced in respect to assets and liabilities, it could make no difference whether his bank stock was deducted

from his indebtedness or his indebtedness deducted from his bank stock, as by either method, no sum for personal estate would remain for taxation.

The defendant requested the court to instruct the jury that the plaintiff was not entitled to any deduction as claimed by him, if he wilfully misrepresented and under-estimated the value of the Sprague National Bank stock in his inventory. This request was properly denied, unless the plaintiff placed a value upon this stock in his inventory and the evidence tended to show that he wilfully misrepresented and undervalued his stock. It does not appear from the defendant's exceptions, nor from the plaintiff's inventory, that the plaintiff placed any value upon his stock. It appears that some figures were placed opposite the shares of stock and erased, but by whom they were placed there or when erased, whether before or after the delivery of the inventory, does not appear. It does not appear from the defendant's exceptions, or from any evidence to which our attention has been called, that the evidence tended to show that the plaintiff wilfully made any misrepresentations respecting the value of his stock, by his inventory or otherwise.

The defendant claims, that, if the tax on the personal estate is invalid, the judgment should be reversed, and that the plaintiff should have relief only in respect to taxes assessed upon his personal estate, as deductions for debts owing do not extend to real estate. In respect to this claim, it is sufficient to say, that it does not appear from the defendant's exceptions that any of the taxes in question were assessed upon the plaintiff's real estate.

*Judgment affirmed.*