[S. F. Nos. 3018, 3019. In Bank.—July 10, 1903.]

In the Matter of the Estate of JACOB C. JOHNSON, Deceased. M. IDA BURNET et al., Appellants in No. 3018, v. ANNA E. JOHNSON, Executrix, et al., Respondents; S. E. JOHNSON et al., Appellants in No. 3019.

ESTATES OF DECEASED PERSONS—COLLATERAL INHERITANCE TAX—EXEMPTION OF NEPHEWS AND NIECES—CONSTITUTIONAL LAW—CASE REVERSED.—The Amendatory Act of 1897, exempting nephews and

nieces of the deceased when resident of this state, is constitutional and valid. The case of *Estate of Mahoney*, 133 Cal. 180,[1] is reversed on this subject. [Beatty, C. J., dissenting.]

ID.—CONSTRUCTION OF CONSTITUTION OF UNITED STATES—PRIVILEGES AND IMMUNITIES OF CITIZENS OF STATE.—Section 2 of article IV of the constitution of the United States, providing "that the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states," does not have the effect to strike down or limit or restrict the right of the state to confer any immunities or privileges upon its own citizens which it may choose to confer, but is merely protective, and measures the rights of citizens of other states, and becomes part of the law of this state conferring privileges upon its own citizens.

ID.—TAXATION—PROVINCE OF LEGISLATURE—POWER OF COURT.—It is for the legislature alone to impose the burden of taxation, and the courts have no power to impose a burden of taxation not imposed by the legislature.

APPEALS from an order of the Superior Court of the City and County of San Francisco fixing a collateral inheritance tax. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

I. I. Brown, John H. Durst, and Garoutte & Goodwin, for Appellants.

L. F. Byington, District Attorney, and I. Harris, Deputy, for S. H. Brooks, Treasurer, Respondent.

J. A. Stephens, for Anna E. Johnson, Executrix, Respondent.

HENSHAW, J.—There are two appeals, the one taken by resident nephews and nieces, the other by non-resident nephews and nieces, citizens of sister states. Both are from the order of the court holding their respective distributive portions of the estate of the deceased liable for the payment of the collateral inheritance tax under the law as it stood in 1897. (Stats. 1897, p. 77.) So much of section 1 of that act as is necessary to this consideration is as follows: "After the passage of this act, all property which shall pass by will, . . . other than to the use of his or her father, mother, husband, wife, lawful issue, brother, sister, *and nieces or nephews when*

_____
[1] 85 Am. St. Rep. 155.

*a resident of this state,* . . . shall be and is subject to a tax of five dollars on every one hundred dollars of the market value of such property, . . . for the use of the state; . . . provided, that an estate which may be valued at a less sum than five hundred dollars shall not be subject to such duty or tax." The original act of 1893 (Stats. 1893, p. 193) is identical with the section as amended in 1897, saving for the italicized words above quoted, which are added by the amendment.

In the *Estate of Mahoney,* 133 Cal. 180,[1] this amendatory clause was held to be in violation of the provisions of section 2 of article IV of the constitution of the United States, as well as of section 1978 of the Revised Statutes of the United States. It was concluded that the amendment was void and should be stricken from the act, leaving the inheritances of all nephews and nieces liable for the tax as they were under the original act of 1893. Upon this present appeal we are asked to give further consideration to the question, and have done so, with the result that we have reached the conclusion that an erroneous construction was given to the law in the Mahoney case, and that an erroneous principle of constitutional interpretation was there announced.

In the Mahoney case the appealing nephews and nieces were not citizens of any state of the United States, but were aliens, and therefore had no right to raise the constitutional question of immunities and prerogatives pertaining solely to citizens of sister states. One who does not belong to the class that might be injured by a statute cannot raise the question of its invalidity. (*Brown* v. *Ohio Valley Ry. Co.,* 79 Fed. 176; *Red River Valley etc. Co.* v. *Craig,* 181 U. S. 548; *United States* v. *Moriarity,* 106 Fed. 886.) A court will not decide a constitutional question unless such construction is absolutely necessary; and in the Mahoney case, since the appellants were aliens, and claimed no protective rights as citizens, no constitutional question was involved. It would have been sufficient in disposing of their appeal to have said, as was said by the federal court in the case last cited, "When a non-resident of the states assails the constitutionality of a statute upon the ground that it denies to him a privilege granted to the citizens of this state, it will be time enough to consider

---

[1] 85 Am. St. Rep. 155.

the constitutional question suggested. Courts will not listen to those who are not aggrieved by an invalid law." As the supreme court of the United States has said in *Chicago Ry. Co.* v. *Wellman,* 143 U. S. 339, "But exercise of the power to declare the statute unconstitutional and void is the ultimate and supreme function of courts. It is legitimate only in the last resort, and as a necessity in the determination of a real, earnest, and vital controversy between individuals." Still further, as hereinafter will be shown, the decision in the Mahoney case rested upon illegal assumptions of both appellants and respondent, and was therefore invited error. The appellants' first contention was, as expressed by the commissioner in the opinion in the Mahoney case, "That legacies to nephews and nieces are exempt from the collateral inheritance tax, whether they reside in this state or not." This contention was a claim that section 2 of article IV of the constitution of the United States secured not merely to citizens of other states the immunities and privileges granted by a state to its own citizens, but secured the same to aliens, to residents of territories, and to citizens of the United States who are not citizens of any state, none of which classes comes under the protecting shield of the constitution. The appellants' second contention in the Mahoney case was, that the court should strike out from the amendment the clause "when a resident of the state," upon the assumption that because it favored citizens of the state it was violative of the constitution of the United States, and therefore void. This assumption was admitted by respondents and accepted in the opinion, respondents contending merely that the clause "when a resident of the state" was inseparable from the amendment, and the court must strike out the whole amendatory clause,— namely, "and nephews and nieces when a resident of the state,"—and the opinion adopted the latter view, which was perfectly sound, upon the assumption that the exemption of resident nephews and nieces was in and of itself unconstitutional. But that such privilege or benefit conferred by a state upon its own citizens, as expressed by this law, was not unconstitutional, we think is demonstrable upon principle as well as upon all adjudications.

Section 2 of article IV of the constitution of the United

States declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." In this there is no striking down of or limitation upon the right of a state to confer such immunities and privileges upon its own citizens as it may deem fit. The clause of the constitution under consideration is protective merely, not destructive, nor yet even restrictive. Over and over again has the highest court of the United States so construed this provision. Thus in the Slaughterhouse cases (16 Wall. 36) it is said: "The constitutional provision there alluded to did not create those rights which it called privileges and immunities of citizens of the states. . . . Nor did it profess to control the power of the state governments over the rights of its own citizens. Its sole purpose was to declare to the several states that whatever rights, as you grant or establish them to your own citizens, or as you limit or qualify or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other states within your jurisdiction." (See, also, *Blake* v. *McClung*, 172 U. S. 165; *Ward* v. *Maryland*, 12 Wall. 418.) It will be noted not only that the constitutional provision is not restrictive, but that it is neither penal nor prohibitory. It nowhere intimates that an immunity conferred upon citizens of a state, because not in terms conferred upon citizens of sister states, shall therefore be void. Some force might be given to such an argument were the constitutional provision couched in appropriate language for the purpose. If, for example, it had said, "No citizen of any state shall be granted any immunity not granted to every citizen of every state," or had it begun its declaration by saying that "It shall be unlawful to grant to citizens of any state any privilege or immunity not granted to citizens of every state," it might then have been argued that a legislative attempt so to do would be declared violative of the express mandate of the constitution, and therefore void. But such is neither the scope, purpose, nor intent of the provision under consideration. It leaves to the state perfect freedom to grant such privileges to its citizens as it may see fit, but secures to the citizens of all the other states, by virtue of the constitutional enactment itself, the same rights, privileges, and immunities. So that, in every

state law conferring immunities and privileges upon citizens, the constitutional clause under consideration, *ex proprio vigore,* becomes an express part of such statute. Thus it is expressed by Mr. Justice Harlan, in *Blake* v. *McClung,* 172 U. S. 165: "The object of the constitutional guaranty was to *confer* on the citizens of the several states a general citizenship, and to *communicate* all the privileges and immunities which the citizens of the same state would be entitled to under like circumstances. . . . These principles have not been modified by any subsequent decision of this court." Here, then, in precise terms, and from the highest court of our land, charged with the duty of construing our governmental law, it is declared that the purpose of the constitutional guaranty is to *confer* and *communicate* all privileges which may thus be granted by a state to its own citizens, a rule of construction obviously radically different from that which would strike down an immunity granted by a state to its own citizens, because in terms such immunity had not been conferred upon citizens of all the states. It is unnecessary that a statute should so expressly provide. The constitution itself becomes a part of the law.

And this, in giving operation to that constitutional provision, is what the courts have always done. They have never stricken down the immunity and the privilege which a state may have accorded to its own citizens. They have never annulled the exemption. They have always construed the law so as to relieve the citizens of other states, and place all upon equal footing. Thus in Vermont, where a statute exempted certain personal property of residents, but did not so exempt the like property of non-residents, the tax upon the latter, not the exemption upon the former, was adjudged void, so that non-residents should enjoy the equal right of exemption. (*Sprague* v. *Fletcher,* 69 Vt. 69.) And in Massachusetts, where the state law required every corporation to retain and pay to the state one fifteenth of all dividends payable to stockholders residing outside the state, the supreme court of Massachusetts in like manner adjudged the burden void, and extended the exemption to all citizens of sister states. (*Oliver* v. *Washington Mills,* 11 Allen, 268.) And by the supreme court of Alabama the section of the statute imposing a tax

upon slaves belonging to residents of other states higher than
that imposed upon slaves belonging to citizens of the state
was adjudged void only as to the burden. And for further
instances reference may be made to *Wiley* v. *Palmer*, 14 Ala.
627; *Fechheimer* v. *City of Louisville*, 84 Ky. 306; *McGuire*
v. *Tax Collector*, 32 La. Ann. 832; *State ex rel. Hoadley* v.
*Board Ins. Com.*, 37 Fla. 564; *Roby* v. *Smith*, 131 Ind. 342;[1]
*Shirk* v. *La Fayette*, 52 Fed. 857; *Black* v. *Seal*, 6 Houst.
541; *Davis* v. *Pierse*, 7 Minn. 13;[2] *Blake* v. *McClung*,
172 U. S. 165. In all these cases, and in every other case, if
a privilege or immunity has been by the state conferred upon
its citizens, and not in terms upon the citizens of other states,
such privilege and immunity is not for that reason declared
void, but the protecting arm of the constitution is thrown
around the citizens of every other state who thus are em-
braced within the privilege granted. The converse of the
proposition is this,—and it is the form in which the question
has most frequently arisen,—that when a state has sought to
impose a burden upon citizens of other states not imposed
upon citizens of its own state, such effort is always held to be
void. This is a most vital distinction, which is lost sight of in
the Mahoney case. Thus the last expression of the legislative
will in the amendment of 1897 was to confer an exemption
upon citizens of the state of California—a particular class—
nephews and nieces. It was the legislative design, clearly ex-
pressed, that their property should not be subjected to the
burden of the tax, and yet by that decision upon their prop-
erty is imposed a burden which the legislature not only meant
should not be imposed, but from which it expressly declared
that the property should be exempted. The result is the judi-
cial creation and imposition of a burden—a tax—in forth-
right violation of the declared legislative intent. This a
court will never do. It is for the legislature alone to impose
burdens by way of taxation. It is never the province or pre-
rogative of a court. The holding in the Mahoney case, strik-
ing out the amendment of 1897, imposes a special tax upon
citizens of this state, not by legislative enactment, but in the
teeth of the express legislative prohibition. It is a canon of
construction that an act of the legislature will yield to the

[1] 31 Am. St. Rep. 439.          [2] 82 Am. Dec. 65.

constitution so far as necessary, but no further. (*Scott* v. *Flower*, 61 Neb. 620.) The constitutional immunity goes only to citizens of sister states, and there is a clear distinction thus recognized between citizens of the states and citizens of the United States who are not citizens of any state, as well as citizens of alien states. (*Murray* v. *McCarty*, 2 Munf. 393.) By virtue of the constitution of the United States, the immunity which the legislature by the amendment of 1897 conferred upon citizens of this state is extended to citizens of sister states, but the immunity goes no further. Citizens of territories, of the District of Columbia, and of our new possessions, as well as aliens, are not exempted, and their property is thus liable for the tax.

The case of *Sprague* v. *Thompson*, 118 U. S. 90, cited in the opinion in the Mahoney case, is expressly in point upon this question. There the act of Georgia provided that shipmasters of all vessels bearing toward the ports of Georgia, excepting coasters of the state, etc., refusing to accept a pilot, shall be liable to pay, etc. The manifest and express design of this law was to impose a burden upon all vessels entering the ports of Georgia, excepting those owned by its citizens. It came in direct conflict with section 4237 of the Revised Statutes of the United States. That section was enacted in exercise of the commerce power of Congress, and provides that "no regulations or provisions shall be adopted by any state which shall make any discrimination in the rate of pilotage between vessels sailing between ports of one state and vessels sailing between ports of different states, or any discrimination, . . . and all existing regulations or provisions making any such discriminations are annulled and abrogated." Those provisions had to do wholly with the commercial relations existing between states. Section 4237 prohibited the enactment of statutes of a certain description, and provided that by their terms they must not discriminate in the particulars mentioned. Herein there was no question of conferring benefits. It was the question of imposing illegal exactions, and the supreme court of the United States declared that the effort of the state of Georgia so to do was void. Up to this point the decision could have been taken for granted. The law was plain, almost commonplace, but in the

argument an attempt was made to have the supreme court uphold the whole law by striking out the exception, and this it refused to do upon the ground not that they were not separable, but that in eliminating the exception a burden was imposed upon a class, when the legislature never had intended to impose it. In this sense the provisions were inseparable, and the whole section was annulled. In the case at bar we have the expression of the legislative intent to confer a certain immunity upon citizens of this state. By force of the constitution of the United States, that immunity is extended to all citizens of sister states, leaving, as liable for the burden of the tax, the property of all other nephews and nieces, aliens and citizens of the United States, who are not citizens of any particular state.

The order is therefore reversed, with directions to the court to enter its order in conformity with the foregoing views.

Shaw, J., Angellotti, J., McFarland, J., Van Dyke, J., and Lorigan, J., concurred.

BEATTY, C. J., dissenting.—I dissent. The Mahoney case (133 Cal. 180 [1]), which is overruled by the present decision, was, in my opinion, correctly decided. It may be that the reasoning of the opinion in the former case was somewhat inconclusive, but I think the reasoning of the present opinion is quite as unsatisfactory. My own view of the case may be very briefly stated. There was a law—the act of 1893—of undoubted validity which imposed an inheritance tax upon the distributive shares of all nieces and nephews. That law could not be repealed by an unconstitutional act; and if the act of 1897 is unconstitutional, as held in the Mahoney case, the law of 1893 is still in force. Was the act of 1897 unconstitutional? I do not hold that it was unconstitutional because in conflict with the constitution of the United States; for I concede that where a state, by a law free from any conflict with its own constitution, confers a right or immunity upon its own citizens, the sole effect of the constitution of the United States is to make the citizens of other states equal participants in the same right or immunity. But if an act is in conflict with the state constitution, it confers no right or im-

[1] 85 Am. St. Rep. 155.

munity upon the citizens of the state, and there is nothing for the constitution of the United States to operate upon. This, in my opinion, is the proposition which has been overlooked in the present case, as it was in the Mahoney case. To my mind, the act of 1897 is plainly in conflict with the constitution of California. Before its adoption the inheritances or legacies of all nephews and nieces, residents and non-residents alike, were subject to a uniform tax. The intention of the legislature in the amendatory act to leave the tax resting upon non-resident nephews and nieces is just as clearly manifest as their intention to relieve resident nephews and nieces. The legislature intended, in other words, to pass a special law based upon a classification justified by no natural, intrinsic, or constitutional distinction between those assigned to the different classes, contrary to the prohibition of our constitution. (Const., art. I, sec. 2; art. IV, sec. 25.)

With respect to the right of inheritance, there is no natural or intrinsic difference between residents and non-residents who are all citizens of the United States. There may be— indeed, I think there is— an intrinsic and substantive difference between alien and citizen—a difference recognized as a ground of discriminating legislation by the general consensus of all nations. But as between citizens of the United States there is no intrinsic difference as respects the right of inheritance, and there is no difference established or recognized by our state constitution. If this is so, the principle declared in *Pasadena* v. *Stimson*, 91 Cal. 251-252, and reaffirmed in numerous subsequent cases, invalidates the act of 1897, and leaves the act of 1893 in full operation, as was held in the Mahoney case.

In the opinion of the court it is said that the result of holding the act of 1897 unconstitutional "is the judicial creation and imposition of a burden,—a tax,—in forthright violation of the intention of the legislature," etc., and the case of *Sprague* v. *Thompson*, 118 U. S. 90, is cited in support of this proposition. The distinction between that case and this is to my mind very plain. The law of Georgia, there considered, was the first law on the subject. Before its enactment there had been no law imposing pilotage charges upon any one refusing the services of a pilot, and the first law by which

the legislature of Georgia attempted to impose such charges upon citizens of other states exempted by express provision the citizens of Georgia, South Carolina, and Florida. Counsel attempting to uphold the law were of course obliged to concede that the discrimination attempted could not be enforced, but they contended that the exemption should be struck from the law as invalid, and thus leave it undiscriminating. The supreme court very properly said. this is something we cannot do, because the legislature of Georgia has never imposed, or manifested any intention to impose, this burden upon its own citizens, and the courts cannot do so without usurping .legislative functions. This was correctly and justly said; for though a court does not exceed its functions in preventing discrimination by declaring void a discriminating statute, it would be usurping legislative power if it attempted to prevent discrimination by extending to a whole class the provisions of a statute which in terms excludes a portion of the class.

In this case, to declare the act of 1897 wholly void, would not be to add anything to a statute for the purpose of keeping it alive. We should only be doing what we continually do in invalidating unconstitutional legislation. And if the effect of invalidating an amendatory act is to leave in its original form the act which the legislature attempted to amend, this is not to legislate; it is only to say, as we so often say, the legislature has failed to pass a valid act.

The judgment of the superior court should be affirmed.