[S. F. No. 9090. In Bank.—October 5, 1920.]

## QUONG HAM WAH COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA, et al., Respondents.

[1] CONSTITUTIONAL LAW — DISCRIMINATORY STATUTE — RIGHT OF ATTACK.—The general rule that a statute purporting to make an unconstitutional discrimination between persons or classes of persons cannot be assailed on the ground of unconstitutionality by a person not belonging to the class discriminated against, is subject to certain well-defined exceptions, as, where no member of such a class is in a position to raise the constitutional question, any person affected by the application of the statute can urge its unconstitutionality.

[2] WORKMEN'S COMPENSATION ACT—INJURIES TO EMPLOYEES OUTSIDE OF STATE—CONSTITUTIONALITY OF PROVISION—RIGHT OF EMPLOYER TO ATTACK.—An employer has the right to attack the constitutionality of section 58 of the Workmen's Compensation, Insurance and Safety Act (Stats. 1917, p. 870), authorizing compensation for injuries received outside the state, where the employee is a resident of the state and the contract of employment is made within the state, on the ground that the section is discriminatory and violative of section 2 of article IV of the constitution of the United States in not providing for compensation for injuries sustained by nonresident workmen.

[3] ID.—APPLICABILITY OF PROVISION—CITIZENS AND ALIENS DOMICILED WITHIN STATE.—The benefits of section 58 of the Workmen's Compensation Act, authorizing compensation for injuries received outside the state where the employee is a resident of the state and the contract of employment is made within the state, extends solely to citizens of this state and to aliens domiciled herein and discriminates against nonresident aliens and citizens of other states.

[4] ID.—OBLIGATION IMPOSED UPON EMPLOYERS—NATURE OF—POWER OF LEGISLATURE TO ENACT.—Section 58 of the Workmen's Compensation Act, authorizing compensation for injuries received outside the state where the employee is a resident of the state and the contract of employment is made within the state, is not an attempt to create an obligation merely as an incident to the status of master and servant, but is, in form and substance, a genuine regulation of

1. Who may raise objection to constitutionality of statute or ordinance, notes, 19 Ann. Cas. 175; Ann. Cas. 1915C, 57.

2. Constitutionality of Workmen's Compensation Act, notes, **Ann. Cas.** 1912B, 174; **Ann. Cas.** 1915A, 247; **Ann. Cas.** 1916B, 1286; **Ann. Cas.** 1917E, 401, 839; **Ann. Cas.** 1918B, 611.

contracts subject to the sovereignty of the state, and within the power of the legislature to enact.

[5] ID.—PROVISION IN CONTRAVENTION OF FEDERAL CONSTITUTION.—Section 58 of the Workmen's Compensation Act, authorizing compensation for injuries received outside the state where the employee is a resident of the state and the contract of employment is made in this state, is in contravention of section 2 of article IV of the constitution of the United States in giving citizens of the state a privilege denied to the citizens of other states.

[6] ID.—EFFECT OF VIOLATION OF CONSTITUTION — EXTENSION OF BENEFITS TO NONRESIDENTS.—The provisions of the federal constitution do not have the effect of rendering invalid that portion of the Workmen's Compensation Act providing for an extension of its benefits to residents who are injured abroad, but it allows such portion of the act to stand as effective and valid, and, automatically and without regard to the intent of the state legislature, extends the benefits created by the act to nonresidents, or rather to such nonresidents as are citizens of sister states.

[7] CONSTITUTIONAL LAW—DISCRIMINATORY STATE STATUTE—RIGHT OF NONCITIZEN.—When a state statute imposes a burden on a noncitizen which is not imposed on the citizen of the state, the noncitizen may have relief from the burden thus imposed by invoking the provision of the federal constitution for the nullification of the discriminatory legislation, but when a privilege is granted to a citizen and withheld from a noncitizen, the latter finds relief in the provision of the federal constitution, which, by operation of law, so to speak, extends the privilege to him.

PROCEEDINGS on Certiorari to review an award of the Industrial Accident Commission.   Affirmed.

The facts are stated in the opinion of the court.

Gorrill & Trowbridge and Delger Trowbridge for Petitioner.

A. E. Graupner and Warren H. Pillsbury for Respondents.

LENNON, J.—*Certiorari* to review the action of the Industrial Accident Commission in making an award pursuant to the terms of section 58 of the Workmen's Compensation, Insurance and Safety Act.   (Stats. 1917, p. 870.)

Upon the first hearing in this court, the award was annulled upon the theory that said section 58 of the Workmen's Compensation Act granted to citizens of this state a

privilege which it denied to noncitizens, and was, therefore, violative of section 2 of article IV of the federal constitution. (*Quong Ham Wah Co.* v. *Industrial Acc. Com.*, 59 Cal. Dec. 18.) Upon petition for rehearing the judgment of this court in the first instance was set aside and the cause set down for a hearing "for the purpose of considering the following questions:

"(1) To what extent may the state give extraterritorial effect to its laws fixing the incidents of the relation of employer and employee when such relation has its inception within the state?

"(2) Assuming that the state has the power to give extra territorial effect to its laws in such a case and assuming that a discrimination is made between residents and nonresidents of the state by the provisions of the Workmen's Compensation Act extending the incidents of the relation of the employer and employee therein provided for to residents but not to nonresidents when the relation has its inception within the state but the injury to the employee occurs elsewhere, is such discrimination contrary to the federal constitution, and if so, does the federal constitution have the effect of rendering invalid that portion of the Workmen's Compensation Act providing for such extension in the case of residents, or (a point not made in the original briefs), does it have the effect of allowing this portion of the act to stand as effective and valid but of extending the incidents of the relation under similar circumstances to nonresidents, although there is no provision in the act for such extension to nonresidents?" (Minutes of the Court, 59 Cal. Dec. No. 3111.)

In keeping with the order granting a rehearing, counsel for the respective parties briefed the case anew, painstakingly directing their efforts, in addition to a discussion of the points originally made, to an exhaustive exposition of the law appertaining to the subject matters designated in the order granting the rehearing. Therefore, aside from the recognition due the commendable efforts of counsel to facilitate the avowed purpose of the order, a discussion not only of the points originally made, but also of those designated in the order, would seem to be necessary to a decision of the case as now presented, even though the latter points

were not necessarily involved in the case as prepared and presented in the first instance.

Section 58 of the Workmen's Compensation Act reads as follows: "The commission shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state, and any such employee or his dependents shall be entitled to the compensation or death benefits provided by this act." (Stats. 1917, p. 870.)

Petitioner, the employer of the injured workman, attacks the validity of this statute on the ground that it violates section 2 of article IV of the constitution of the United States, which provides that "The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." At the outset we are confronted again as we were in the first instance, with the contention that the petitioner cannot be heard to question the constitutionality of the statute in controversy because it is not one of the class claimed to be discriminated against by the statute. The provision of the Workmen's Compensation Act now under attack is identical in phraseology with that considered by this court in *Estabrook Co.* v. *Industrial Acc. Com.*, 177 Cal. 767, [177 Pac. 848]. In that case this court expressly declared that it was not required to pass upon the constitutional question sought to be raised, and declined to discuss that question upon the merits because, as was held, "a contention that a statute denies equal rights and privileges by discriminating against persons and classes of persons may not be raised by one not belonging to the class alleged to be discriminated against." (*Estabrook Co.* v. *Industrial Acc. Com.*, *supra.*) Such, undoubtedly, is the general rule, but the Estabrook case is fundamentally wrong if it is to be taken as definitely deciding that there are no exceptions to the general rule enunciated therein, and, if that be its purport, it should be flatly overruled, as was done by a majority of the court in the opinion rendered in the first instance in the instant case. (*Quong Ham Wah Co.* v. *Industrial Acc. Com.*, *supra.*) Apparently, however, the court in the Estabrook case did no more than declare and apply the general rule that a statute purporting to make an

unconstitutional discrimination between persons or classes of persons cannot be assailed on the ground of unconstitutionality by a person not belonging to the class discriminated against. This general rule, however, is not a hard-and-fast rule which must be arbitrarily and inflexibly applied to every situation involving the constitutionality of a statute, regardless of contingencies which may extend its operation beyond the confines of the classes which it was aimed to cover and control and which ultimately culminates in a grievance against persons not originally within the contemplation of the statute. In other words, the general rule under discussion and decision in the Estabrook case must necessarily be subject to certain well-defined exceptions which, in so far as a perusal of the record in the Estabrook case shows, were not, in that case, pressed upon the attention of the court. Clearly, the petitioner in the instant case, has brought itself within the scope of one or more of the recognized exceptions to the general rule enunciated in the Estabrook case.

[1] Thus, where no member of a class alleged to be unlawfully discriminated against by a statute is in a position to raise the constitutional question, then any person affected by the application of the statute can urge its unconstitutionality. In *Greene* v. *State*, 83 Neb. 84, [131 Am. St. Rep. 626, 119 N. W. 6], the plaintiff in error was convicted under a statute making it a penal offense to commit "blackmail" against citizens or residents of the state of Nebraska. On appeal he urged that the statute was unconstitutional by reason of the fact that it operated to protect only citizens and residents of the state of Nebraska, and, therefore, unlawfully discriminated against the citizens and residents of all other states. In upholding this contention the court said: "We have not overlooked those cases which hold that a court will not listen to an objection made to the constitutionality of an act by a party whose right it does not affect, and who has, therefore, no interest in defeating it. Where the constitutional objection is that the penalties of the law are directed against a certain class without just reason for such discrimination, it is safe to leave the question of the constitutionality of such laws to be raised by the parties against whom the discrimination is made; and such have been the facts in all the cases we have examined laying down this

rule. It is inapplicable to a case where the vice of the law consists in an unwarranted discrimination between the individuals against whom the aggression thereby forbidden is committed. In such cases there is no way by which any person within the jurisdiction of the state denied the protection of its criminal law could bring the question before a court for its determination. If the legislature should enact a law amending our Criminal Code so that the crimes therein specified should be crimes only when committed against citizens or residents of the state, such an act would be absolutely void, but its invalidity could never be brought before the court by any person belonging to the classes thereby denied the protection of the criminal law. If we apply to such a law the rule that its constitutionality would only be considered when the objection was made by a party discriminated against, there could be no objection to its validity. When such a law is sought to be enforced against any person, whether belonging to the classes discriminated against or not, it should be declared void.''

Respondents suggest that the reasoning of this case is based upon an inaccurate conception of the nature and effect of an unconstitutionally discriminatory statute. Such statute is, they contend, not merely presumptively valid until it is set aside by the courts, but, unlike other statutes which offend against the constitution, it is actually and legally valid until set aside. Were this view of the nature of a discriminatory statute to be accepted, the doctrine of *Greene* v. *State, supra,* might be paraphrased thus, that such a law is in fact valid as to all classes except the class discriminated against, unless that class is precluded from making a complaint, in which event the law is invalid as to every class. Such a doctrine would assuredly be strange and indefensible. The truth of the matter is, however, that a discriminatory law is, equally with the other laws offensive to the constitution, no law at all. (*Buchanan* v. *Warley,* 245 U. S. 60, 72, [Ann. Cas. 1918A, 1201, L. R. A. 1918C, 210, 62 L. Ed. 149, 38 Sup. Ct. Rep. 16].) Whatever validity it may be said to possess, it has such validity merely by virtue of the presumption of validity attaching to the acts of the legislative branch of the government. This presumption being rebuttable may be attacked by a litigant whenever it is material to his case unless he is prevented from doing so by

some special exception. Such exceptions possess no peculiar sanctity and invest the law with no actual validity; they should naturally be confined by the limits of the reasons which occasioned their adoption and should give way to considerations of policy paramount to those reasons. Such an exception exists in the matter of attack upon the presumptive validity of a discriminatory statute and is to the effect that only a member of the class discriminated against can attack the presumption. The reason for the exception is to be found in the rule that the courts will consider questions of the constitutionality of statutes only when such consideration is a necessity in the determination of a real earnest and vital controversy between individuals. The exception, if literally accepted in its general form, is broader than the reason upon which it is based; but, independently of this consideration, it must yield to a policy paramount to the reason itself where no member of the class discriminated against can raise the question. The reason for the exception is in the nature of a rule developed for the regulation of the ultimate and supreme function of the courts to declare unconstitutional statutes to be void and of no effect; and such a regulatory rule must itself be subject to exception where it would otherwise operate to prevent altogether the exercise of this function, a function which it is the most solemn duty of the courts to exercise in a state governed under a written constitution which is the supreme law of the land. Where no member of a class discriminated against could ever attack the constitutionality of the discriminatory statute, the rule reserving to such persons the right to raise the constitutional question would totally prevent the exercise by the court of its function of passing upon that question and would place it in a position where it would for all time enforce rights and obligations created by an obviously void enactment. In such case any litigant to the determination of whose claim the constitutional question is fairly relevant should be permitted to raise the constitutional question. In the instant case, the Compensation Act does not give the commission jurisdiction over controversies arising out of injuries sustained abroad by workmen who are not residents of California. It is clear, therefore, that a nonresident would have no standing before the commission or before any court to make a claim under the act. And, not having

jurisdiction over his injury, neither the commission nor the courts could entertain or adjudicate his claim for compensation nor the constitutional question involved. [2] Since, therefore, no member of the class discriminated against can ever raise the constitutional question, the petitioner is entitled to assail the constitutionality of the statute, since a determination of that question is clearly relevant in determining its rights herein.

Moreover, the fact that the constitutional rights of petitioner are directly affected by the statute here in question shows that the determination of the constitutionality of a discriminatory statute may be a necessity in the determination of a real and vital controversy between parties neither one of whom is a member of the class discriminated against, and that, therefore, the general rule that only members of the unfavored class may attack the enactment is broader than the reason upon which it is based. In this behalf respondents suggest that the cases indicate that the constitutionality of a discriminatory statute can be raised only by one injured by the *discrimination* and in no case by one whose constitutional or other rights are injured by the *legislation.* A careful analysis of the cases presented fails to support this theory. Moreover, the supreme court of the United States has announced and acted upon the contrary rule in *Buchanan* v. *Warley, supra,* a decision which is precisely in point in the instant case. In that case a vendor of land, a white man, sued to compel the vendee, a colored person, to receive and pay for a certain parcel of land which he had agreed to buy. Defendant had judgment in the lower court solely because of the effect of an ordinance making it illegal for colored persons to reside upon the property in question. Plaintiff contended that the ordinance was unconstitutional for the reason that persons of color were unlawfully discriminated against. His right to assail the statute on the ground stated was questioned on the theory that he was not a member of the class discriminated against. The court clearly recognized, as it has done both in earlier and in subsequent cases, that in general one cannot assail the constitutionality of a statute in reliance upon the grievance of another, but it pointed out that while plaintiff had no grievance by reason of the *discrimination,* he had a grievance by reason of the *legislation* which by narrowing

the market for his land deprived him of property, such deprivation being without due process of law in event the statute was for any reason unconstitutional. The court proceeded, therefore, to consider the merits of the constitutional question of discrimination. That case is precisely in point here, for, in the instant case, while petitioner has no grievance by reason of any *discrimination,* it has a grievance by reason of the *legislation* which, by imposing upon it the liability of an insurer for certain classes of its employees, operates to deprive it of property, such deprivation being without due process of law in event the statute is for any reason unconstitutional. The constitutional question of discrimination must therefore be discussed and decided.

[3] Section 58 of the Workmen's Compensation, Insurance and Safety Act of 1917 restricts the right to claim the benefit of the act in the case of injuries suffered abroad to employees who are residents of California at the time of the injury. Since the act assumes that at the time of the injury the employee will be beyond the boundaries of the state, the word "residents" must necessarily have been used to designate "persons domiciled in" California. Citizens of the United States domiciled in California are citizens of the state. (Pol. Code, sec. 51.) The benefits of the act are, therefore, extended solely to citizens of California and to aliens domiciled within the state. It follows that there is a direct discrimination against aliens not domiciled in California, with which we are not concerned, and against citizens of other states of the Union which, if without legal justification, renders the statute unconstitutional. (*Blake* v. *McClung,* 172 U. S. 239, 247, [43 L. Ed. 432, 19 Sup. Ct. Rep. 165; 176 U. S. 56, 67, [44 L. Ed. 371, 20 Sup. Ct. Rep. 307, see, also, Rose's U. S. Notes].)

Respondents contend that the discrimination is justified upon the ground that the obligation imposed upon employers by the act is created as an incident to the status of master and servant, and is, therefore, an obligation which can be created only by the law of the place of injury or by the law of the place of the servant's domicile. Were this reasoning sound it would follow that, in making the discrimination in section 58 of the act upon the basis of domicile, the legislature was merely recognizing a jurisdictional limit upon its power. Respondents' theory is based, however, upon a mis-

conception of the nature of the statute and of the meaning of the term "extraterritorial" as that term is used in describing the operation of the statute.

The theory of territorial sovereignty has been too long established as a principle of international law to admit of question at this time. Rights created by one state may be recognized and enforced by another state at its pleasure, and likewise a status attached to a person by one state may be recognized by another state, into which that person may travel, at the pleasure of the latter state, but *as law* the mandates of the sovereign of a given state can have no effect beyond the territorial limits to which his rule is extended. When, therefore, it is said that a statute, such as the Workmen's Compensation Act, has an extraterritorial effect, it cannot mean that the law does, or attempts to, create rights abroad; it can only mean that an act occurring beyond the geographical limits of the state is recognized as the basis for the creation, or condition for the enforcement, of a right created and enjoyed within this state. The power of an absolute sovereign to thus sanction the enforcement, within the territory subject to the jurisdiction of that sovereign, of rights based upon acts occurring abroad cannot be questioned upon the ground of any inherent deficiency. It is, therefore, a power which may be exercised by this state, subject only to the restrictions of the state and federal constitutions. We may assume, in accordance with the contention of respondents, that, if the imposition of the obligation to compensate a servant, not domiciled within the state, for injuries sustained without the geographical limits of the state were an attempt to create an obligation merely as an incident to a status, such legislation would conflict with well-defined legal principles. Whether such a law would amount to a mere regulation of status or to an expression of a positive duty the breach of which would be tantamount to a tort, it may be conceded that a law of that nature would not lie within the law-making province of a state which was neither the domicile of the servant nor the *locus delicti*. The effect and purpose of the act now under consideration, however, cannot be held to be the regulation of a status or imposition of a tort liability. It is true that the extension of the liability imposed by the act to acts occurring beyond the territorial limits of the state cannot be supported on the simple

theory that the obligation so imposed is, strictly speaking, purely a contractual liability, for the proposition that a compulsory statute is a contract has been definitely repudiated by this court. (*North Alaska Salmon Co.* v. *Pillsbury,* 174 Cal. 1, [L. R. A. 1917E, 642, 162 Pac. 93].) But the statute which is now before us assumes to extend its effect only to those cases *where the contract of hire was made in this state.* **[4]** It is, therefore, not an attempt to create an obligation merely as an incident to a status but is, in form and substance, a genuine regulation of contracts subject to the sovereignty of the state. The liability which it imposes is, so to speak, in a class by itself, being neither strictly contractual nor delictual, and it may, for want of a better term, be described as *quasi ex contractu.* (*Post* v. *Burger,* 216 N. Y. 544, 550, [Ann. Cas. 1916B, 158, 111 N. E. 351]; *Berton* v. *Dry Dock Co.,* 219 Fed. 763.) The contract creates a relationship under the sanction of the law and the same law attaches as an incident thereto an obligation to compensate for injuries sustained abroad amounting to a sort of compulsory insurance. The legislature may lawfully impose that right and duty upon those operating under a contract subject to the legislative power, and no principle of law is defeated by attaching to such contracts the same duties and rights as incidents to acts abroad that are lawfully imposed as incidents to the same acts occurring within the geographical limits of the state. (Angell on Recovery Under Workmen's Compensation Law for Injuries Abroad, 31 Harvard Law Review, 16; *Smith* v. *Heine Safety Boiler Co.,* 224 N. Y. 9, [Ann. Cas. 1918D, 316, 119 N. E. 878]; *Jenkins* v. *T. Hogan & Sons,* 177 App. Div. 36, [163 N. Y. Supp. 707].)

It is at once apparent that the legislature has equal power to provide for the creation of a compulsory obligation to compensate for injury suffered elsewhere as a regulation of contracts subject to the sovereignty of the state whether the contracting employee be domiciled in this state or not. (Story on Conflict of Laws, 8th ed., p. 375; *Western Metal Supply Co.* v. *Pillsbury,* 172 Cal. 407, 416, [Ann. Cas. 1917E, 390, 156 Pac. 491].) Since, therefore, the right is created only in favor of citizens of the state and domiciled aliens, there is a direct discrimination against citizens of sister states.

The right of the legislature to impose reasonable regulations upon contracts subject to its sovereignty is unquestioned. When, however, the legislature attempts to provide that a substantial privilege shall be incident to certain contracts of employment when entered into in this state by citizens of this state and that that privilege shall not be incident to identical contracts of employment when entered into in this state by citizens of other states of our Union, the enactment is clearly in contravention of section 2 of article IV of the federal constitution. "Different states may have different policies, and the same state may have different policies at different times. But any policy the state may choose to adopt must operate in the same way on its own citizens and those of other states. The privileges which it affords to one class it must afford to the other. Any law by which privileges to begin actions in the courts are given to its own citizens and withheld from the citizens of other states is void, because in conflict with the supreme law of the land." (*Chambers* v. *Baltimore & O. R. Co.*, 217 U. S. 142, [52 L. Ed. 143, 28 Sup. Ct. Rep. 34, see, also, Rose's U. S. Notes].) It is true that many procedural discriminations between citizens and noncitizens have been upheld; but the rule applied in such situations has no application where a substantial substantive right is granted to citizens and under like circumstances is denied to citizens of other states. The statute here in question provides for the creation within this state of a right to accident insurance as an incident to certain contracts of employment in favor of citizens and opens the doors of its courts and commissions to citizens to enable them to enforce that right. This right is not accorded to citizens of other states. A privilege and protection of the laws of a substantial nature is thereby accorded to citizens of this state and denied to citizens of other states. This is forbidden by the federal constitution. (*Blake* v. *McClung*, 172 U. S. 239, [43 L. Ed. 432, 19 Sup. Ct. Rep. 165, see, also, Rose's U. S. Notes].)

The constitution provides that "The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." The provision appears without qualification. Its effect is not limited to those cases where its operation will not interfere with the internal policy of the state or with considerations which appear to affect the

general welfare. Its mandate is absolute. It is true that a state may, in the valid exercise of its police power, limit the right of individuals to engage in certain professions or callings. Such regulations will be upheld even though their effect is indirectly to place noncitizens at a disadvantage, but the regulation must be inherently reasonable. (*Ex parte Spinney*, 10 Nev. 323; *La Tourette* v. *McMaster*, 248 U. S. 465, [63 L. Ed. 362, 39 Sup. Ct. Rep. 160].) The principles applied in these cases cannot be invoked under the facts presented here. No reasonable ground can be found for the classification. Respondents make the contention that the court should uphold the right of the state to require compulsory compensation for its citizens alone, inasmuch as it is only citizens or their families who are likely to become a public charge upon the state as a result of injuries sustained abroad. The argument expresses a very excellent reason for requiring compulsory compensation for citizens, but it expresses no reason at all for denying the same right to citizens of other states. In the cases of which *Ex parte Spinney* and *La Tourette* v. *McMaster, supra,* are examples, *restraints* upon engaging in certain occupations which bore more heavily upon citizens of other states were upheld upon the ground that the public good required that the occupations in question be opened only to those having had business or professional experience within the state, the general safety and welfare necessitating the exclusion of others. In none of these cases was the rule sanctioned that a *privilege* could be granted to a citizen of one state and denied to citizens of other states, for the reason that public policy did not require that the privilege be extended to the latter class of persons. Such a rule would be manifestly unsound and altogether in conflict with the constitutional provision here in question. No consideration of public policy requires that citizens of sister states be excluded from the benefits of the act here under consideration. The fact that considerations of public policy do not affirmatively require the extension of the benefits in question to citizens of sister states as strongly as they require their extension to citizens of this state furnishes absolutely no sound reason for the exclusion of the former and affords no reasonable basis for the discrimination.

[5] It follows that the discrimination made in section 58 of the Workmen's Compensation Act contravenes the provisions of the federal constitution.

[6] It is contended, however, and correctly, that the provisions of the federal constitution do not have the effect of rendering invalid that portion of the Workmen's Compensation Act providing for an extension of its benefits to residents who are injured abroad, but that it allows this portion of the act to stand as effective and valid and automatically, and without regard to the intent of the state legislature, extends the benefits created by the act to nonresidents, or rather to such nonresidents as are citizens of sister states. In support of this contention respondents rely upon *Estate of Johnson,* 139 Cal. 532, [96 Am. St. Rep. 161, 73 Pac. 424]. No good reason has been advanced for departing from the doctrine therein declared as follows: "It will be noted not only that the constitutional provision is not restrictive, but that it is neither penal nor prohibitory. It nowhere intimates that an immunity conferred upon citizens of a state, because not in terms conferred upon citizens of sister states, shall therefore be void. Some force might be given to such an argument were the constitutional provision couched in appropriate language for the purpose. If, for example, it had said, 'No citizen of any state shall be granted any immunity not granted to every citizen of every state,' or had it begun its declaration by saying that 'It shall be unlawful to grant to citizens of any state any privilege or immunity not granted to citizens of every state,' it might then have been argued that a legislative attempt so to do would be declared violative of the express mandate of the constitution, and therefore, void. But such is neither the scope, purpose, nor intent of the provision under consideration. It leaves to the state perfect freedom to grant such privileges to its citizens as it may see fit, but secures to the citizens of all the other states, by virtue of the constitutional enactment itself, the same rights, privileges, and immunities. So that, in every state law conferring immunities and privileges upon citizens, the constitutional clause under consideration, *ex proprio vigore,* becomes an express part of such statute. . . . The constitution itself becomes a part of the law. And this, in giving operation to that constitutional provision, is what the courts have always done. They have never stricken down the immunity and the privilege which a state may have accorded to its own citizens. They have never annulled the exemption. They have always construed

the law so as to relieve the citizens of other states, and place all upon equal footing." This is in harmony with and declaratory of the principle laid down by the United States supreme court in the *Slaughter-house Cases,* 16 Wall. 36, 77, [21 L. Ed. 394, see, also, Rose's U. S. Notes], in the following words: "The constitutional provision there alluded to did not create those rights which it called privileges and immunities of citizens of the states. . . . Nor did it profess to control the power of the state governments over the rights of its own citizens. Its sole purpose was to declare to the several states that whatever rights, as you grant or establish them to your own citizens, or as you limit or qualify or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other states within your jurisdiction."

The discrimination complained of in the instant case is to be found in the fact that the state statute under consideration confers upon the citizens of the state privileges and immunities which are not extended by the terms of the statute, either expressly or impliedly, to nonresidents of the state, and clearly the statute in question does not impose nor attempt to impose upon noncitizens of the state burdens or exactions not imposed upon citizens of the state. This difference is all-important in controlling the construction and application of that provision of the federal constitution which declares that "The citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." For, where a state endeavors to place a burden upon noncitizens of the state which is not put upon citizens of the state, obviously the effect of the federal constitutional provision is to abort the endeavor of the state. On the other hand, however, where a state by statute endeavors to confer, and does confer, upon its citizens privileges and immunities not accorded by the statute to citizens of other states, the federal constitution operates, by the very force of its own language, to place citizens of other states in the same category and upon the same footing as citizens of the state in so far as concerns the right to have and enjoy the privileges and immunities conferred by the state upon its own citizens. In other words, the federal constitutional provision was designed for the protection of noncitizens, and, therefore, in any given case calling for its application, the

case and the application must be considered from the viewpoint and in the light of the welfare of the noncitizen. [7] Viewed in this light, it is clear that, when a state statute imposes a burden on a noncitizen which is not imposed on the citizen of the state, the noncitizen may have relief from the burden thus imposed by invoking the provision of the federal constitution for the nullification of the discriminatory legislation. But, when a privilege is granted to a citizen and withheld from a noncitizen, the latter finds relief in the provision of the federal constitution which, by operation of law, so to speak, extends the privilege to him. The obvious resulting difference in the operation and effect of the federal constitutional provision under discussion, is the paramount point of the decision in the *Estate of Johnson, supra,* and it cannot be said that the extension to noncitizens of a statutory privilege granted only to citizens is judicial legislation, for clearly it is the federal constitution itself, and not the courts, which declares that, if citizens of a state are by statute granted privileges and immunities, noncitizens of the state shall likewise be "entitled" to them. The case of *Spraigue* v. *Thompson,* 118 U. S. 90, [30 L. Ed. 115, 6 Sup. Ct. Rep. 988, see, also, Rose's U. S. Notes], which enunciates the principle that the courts cannot eliminate a discriminatory statutory exception and thereby make the statute effective as to a class which the legislature did not have in mind, has application only to that class of cases where it is attempted by the state to put a burden upon nonresidents. That case has no application to the extension to nonresidents of a privilege granted to residents, and, apparently, has never been applied to the latter situation.

The very recent case of *Travis* v. *Yale & Towne Mfg. Co.,* 252 U. S. 60, [64 L. Ed. 460, 40 Sup. Ct. Rep. 228], is relied upon in support of the contention that *Estate of Johnson, supra,* has been overruled by the supreme court of the United States. At first blush this case would seem to weaken the ruling of this court in *Estate of Johnson.* However, upon a close analysis of the Travis case, it will be found that it in no wise affects the doctrine of *Estate of Johnson.* The facts of the former case, substantially stated, were that the state of New York had imposed an income tax upon residents and nonresidents, but granted an exemption to residents of the state on the first one thousand dollars of their incomes,

and further provided that every "withholding agent" (including employers) should deduct and withhold two per centum from all salaries, wages, etc., payable to nonresidents, where the amount paid to any individual equaled or exceeded one thousand dollars in a year, and should pay the tax to the state controller. The court held in affirmance of the judgment of the district court of New York made in the first instance, that in granting to residents exemptions denied to nonresidents the statute violated the provisions of section 2 of article IV of the federal constitution, but a careful reading of the decision in that case reveals the fact that the court did not hold that the entire statutory scheme involved in that case was altogether void and nugatory. That is to say, the court did not declare that the statute was invalid in so far as it related to the imposition of a tax which, when freed and cleared of the attempted unwarranted discriminations, operated uniformly upon residents and nonresidents alike. True it is the court did not, in holding the attempted discrimination unwarranted, declare in terms that the exemptions granted to residents should by the conjunctive operation of the state statute and the fundamental law of the land be extended to nonresidents, but in this behalf it is important to note that neither did the court decide that the statute was wholly invalid, that is to say, that residents and nonresidents entirely escaped the burden of taxation because of the attempted discrimination. That it was not the purpose of the court to so declare is manifest, we think, by the decree rendered in the first instance by the United States district court of New York and affirmed by the supreme court of the United States.

That decree, although not set out in the opinion of the supreme court, is before us by the courtesy and consent of counsel for the respective parties in the instant case, and may, therefore, we take it, be rightly referred to in aid of the ascertainment of the scope and effect of the opinion of the supreme court. The decree mentioned does not, as counsel for the petitioner here contend, enjoin the state of New York from in any way collecting all or any part of the tax in question from nonresidents. While it does enjoin the collection of the state tax from the complainants who were the "withholding agents" and the source of the income upon which the tax was levied, nevertheless it does not purport to

enjoin the collection of the tax, with the discriminations eliminated, directly from resident and nonresident taxpayers. In short, the decree and its affirmance indicate that the court intended to do no more than declare that the discrimination in the granting of exemptions to residents and denying them to nonresidents was, in the language of the supreme court itself, "an unwarranted *denial* to the citizens of Connecticut and New Jersey of the privileges and immunities enjoyed by the citizens of New York." (Italics ours.) In other words, it was the *denial* to residents of other states of exemptions provided in the statute for residents of the state of New York which was declared to be invalidated by the provision of the federal constitution. Inasmuch as the court did not strike down the exemptions in so far as they applied to residents, it follows by necessary implication that, if the exemptions could not be denied to nonresidents and were still extant as to residents, they must be available to nonresidents. This conclusion is confirmed by a perusal of the opinion rendered in the first instance by the district court, where it was carefully said that: "Nothing herein . . . is meant to be decided as to the validity of the statute so far as it relates to residents of the state of New York." (*Yale & Towne Mfg. Co.* v. *Travis*, 262 Fed. 576.) This can mean but one thing, and that is, that the act was valid as to residents and binding to the same extent, and only to the same extent, upon nonresident citizens of other states. While the opinion of the district court cannot, of course, control the interpretation to be put upon the opinion of the supreme court, nevertheless it is illuminating and persuasive when considered in conjunction with the unqualified affirmance by the court of last resort of the decree of the lower court, despite the limitations which the latter court explicitly put upon its judgment.

In any event, it cannot be said from anything contained, either expressly or impliedly, in the Travis decision that the court there went so far as to say that the act in its entirety was invalid and could not be enforced against residents of the state of New York. Therefore, it seems that the Travis case in no way contravenes the rule and the reason for the rule enunciated in *Estate of Johnson, supra,* and, bound as this court is by the authority of the decision in that case until definitely overruled by the supreme court

of the United States, it must apply the rule thereof to the instant case. It follows that, despite the invalidity of the discrimination, the statute itself is valid and may be made to apply uniformly to citizens of California and the citizens of the other states.

The award is affirmed.

Lawlor, J., and Sloane, J., concurred.

OLNEY, J., Concurring.—I concur. I agree, for the most part, with the main opinion, but I am not in accord with its discussion of *Estabrook Co.* v. *Industrial Acc. Com.*, 177 Cal. 767, [177 Pac. 848], and I would prefer to state as briefly as possible my own views for concurring in the result reached.

The law under discussion extends the benefits of the Workmen's Compensation Act to citizens of this state, but not to others, who are injured abroad in the course of their employment, when the employment was originated by contract within the state. The general questions are as to the power of the state to pass such a statute, and, if its power is limited, the exact effect of the limitation upon the statute. These general questions resolve themselves into a series of more particular questions.

First. Has the state any power whatever to prescribe the incidents of the relation of employer and employee when the employment, that is, the actual rendition of services by the employee, is without the state? If the state has no such power, then the present law is wholly void. That a state has no power to prescribe what the law of another sovereignty shall be is, of course, plain. In this sense, and the true sense, a state can give no extraterritorial effect to its laws whatever. But the present law does not attempt to do this. What it attempts to do is to prescribe what shall be the incidents *within this state and according to its own law* of a relation existing without its boundaries. So far as I know, an independent sovereign state has the power to prescribe what incidents it pleases shall attach within its own boundaries to any relation or to any set of facts or happenings, whether existing or occurring within or without its own boundaries. This is nothing more than saying that it has the power to determine what shall be the law within its boundaries. As to this, there is no one to say it nay as a

matter of legal right. There is a decided practical limitation, that of the comity of nations, but this is not a limitation imposed by superior law and binding upon the state, but is only a limitation by way of policy which the state may or may not observe.

The present law, therefore, does not transcend the power inherent in a wholly independent sovereign, and if the state of California has no right to prescribe what shall be the incidents within its borders of an employment abroad, it must be because of some limitation upon its sovereignty. The only limitations of this character are those imposed by the federal constitution upon it as a constituent member of the Union, and, so far as I know, there is no *general* limitation in the federal constitution upon the power of a state to prescribe the incidents which shall attach within its boundaries and by its own laws to happenings or events occurring elsewhere. I conclude, therefore, that the state had the power to pass the law in question subject only to such *special* limitations as the federal constitution may contain.

Second. Is the law in conflict with any special limitation of the federal constitution? The only limitation of the federal constitution which it is claimed the law transcends is that which provides that a citizen of one state shall be entitled to have within another state all the rights and privileges of citizens of the latter. Putting it in a negative way, this constitutional provision means that no state shall discriminate in favor of its own citizens as against those of other states. By the present law our state extends the benefits of its Workmen's Compensation Act to employees who are its own citizens and are injured abroad in an employment originating here, but not to the citizens of other states injured under similar circumstances. It is apparent at once that there is present just the discrimination which the federal constitution seeks to prevent, unless:

1. There is valid reason for making in this case a distinction between citizens of this state and those of other states; or

2. The state was without power to pass such a law effective as to citizens of other states.

As to the first of these alternatives, the only reason advanced to justify the distinction is that it is only in the case of injuries to citizens that they or their families are likely to become public charges. There might be some ground pos-

sibly for this contention if the primary object of the law were to prevent injured employees or their families from becoming public charges. But this is not its purpose except in a very remote degree, and since it is not, the argument entirely fails.

As to the second alternative, it seems to me clear enough from what has already been said that the state has the power to prescribe what shall be the incidents within its own borders and according to its own laws as to everyone within it, citizens or noncitizens, of the relation of employer and employee, whether that relation be engaged in abroad or not. Certainly our attention has been called to no provision of the federal constitution to the contrary, and in the absence of such provision I can see no reason why the inherent sovereign power of the state to make what laws it chooses respecting the rights and obligations of those within its jurisdiction should be limited in this particular. The necessary conclusion, or rather the statement in a slightly different way of what has already been said, is that since so far as the objects of the act are concerned there is no reason for making a difference between citizens and noncitizens, and since it was within the power of the state to make the law apply to the latter as well as to the former, the act purports to make a discrimination which is not permitted by the federal constitution. This leads to the third question, which is:

Third. What under these circumstances is the effect of the provision of the constitution upon the act: Does it destroy it so that neither citizens nor noncitizens shall have its benefits, or does it operate to extend the benefits to noncitizens, so that they, as well as citizens, are "entitled" to its privileges, and the unlawful discrimination is thus removed? Upon this point I agree thoroughly with both the discussion and the conclusion of the main opinion, and with the *Estate of Johnson,* 139 Cal. 532, [96 Am. St. Rep. 161, 73 Pac. 424], to which it refers and upon which it relies. The constitutional provision is couched in the affirmative, that "the citizens of each state shall be *entitled* to all the privileges and immunities of citizens in the several states." When a state endeavors to place a *burden* upon noncitizens but not upon citizens, the necessary effect of the provision is to strike down the burden, to nullify the law which imposes it. But when the state endeavors to confer

upon its citizens *privileges or benefits* not conferred on others, the effect is just the opposite. The citizens of other states become "entitled" to those privileges or benefits, not by the operation of the statute, but by operation of a superior legislative enactment, the federal constitution, which declares in so many words, that they shall be so entitled. The constitutional provision, in other words, is a declaration that whatever rights or privileges the citizens of a state may enjoy the same rights or privileges shall likewise be extended to and enjoyed by the citizens of other states, regardless of the desire of the state that they shall or shall not enjoy them. The result is that employees, both citizens of this state and those of other states, are entitled to the benefits of the act.

Fourth. In the answer just given to the third question lies, it seems to me, the true explanation of such decisions as those of *Estabrook Co.* v. *Industrial Acc. Com., supra.* It is there said that an employer may not question the validity of such a law as the present because he does not come within the class discriminated against, to wit, noncitizen employees. Now, it cannot, in the very nature of things, be true that when it is attempted to charge a man, an employer, for example, with liability under an invalid statute, a statute void because unconstitutional, he cannot question the validity of the statute upon which his liability depends simply because he is not one of the class discriminated against. If the law is a nullity and void, he of necessity is not liable and is entitled in all reason so to claim and show. If there are decisions to the contrary, nothing can be said of them except that they are fundamentally wrong. But the point in such instances as the Estabrook case is that the statute is not void. It is perfectly valid. It is true it contravenes the federal constitution in attempting to withhold its benefits from noncitizens. But it is its attempt to withhold, not to confer, that alone contravenes the constitution, and is therefore invalid and ineffective. The law stands as a valid enactment as to citizens, and the constitution operates to destroy its attempt to withhold its benefits from noncitizens and to extend those benefits to them. This being the true operation of the constitution upon the law which attempts to contravene it, it is plain that it is properly said in such a case that one not a member of the class discriminated against may not raise the question of constitutionality. It does not affect his

liability in the slightest if the law is unconstitutional in the respect claimed, for the effect of the unconstitutionality is not to destroy the law but to extend it. As to him, the constitutional question is purely moot.

The recent decision of the supreme court of the United States in *Travis* v. *Yale & Towne Co.*, referred to in the main opinion, is an exceedingly good illustration of this. New York passed an income tax law allowing certain exemptions as to citizens, not allowed to others. Plainly, no citizen of New York could complain of this discrimination, because it was in his favor. The law was valid as to him. It was invalid as to noncitizens only, and as to them only to the extent of the discrimination. This much and nothing more was held in that case, and to this the decree was carefully limited, as the main opinion shows.

SHAW, J., Concurring.—I concur on the ground that the statute merely confers upon employees residing in this state the privilege of resorting to the Workmen's Compensation Act of this state to obtain compensation for injuries received while in the course of their employment, in all cases where the contract of employment was made in this state, whether the injury was received within or without this state, and that the provision of the constitution of the United States, *ipso facto,* carries this privilege to and confers it upon every citizen of any other state whose contract of employment is made in this state, and thus prevents the statute from being discriminatory in effect. It must be observed that the statute does not purport to withhold this privilege from citizens of other states; it is merely silent with regard to them. If it had contained a clause withholding it from others than residents, such clause would be void. But as it does not, the result is that the federal constitution prevents the statute from having the effect of withholding the privilege from citizens of other states. (*Estate of Johnson,* 139 Cal. 532, [96 Am. St. Rep. 161, 73 Pac. 424].)

To the objection that the statute in effect withholds the privilege from persons who are neither citizens of any state nor residents of this state, the answer is that no provision of the federal or state constitution contains any limitation upon the power of the state legislature to make such discrimination, and that, unless it is so limited, the power is plenary.

(Const., art. IV, sec. 1; *Mitchell* v. *Winnek*, 117 Cal. 525, [49 Pac. 579]; *Sheehan* v. *Scott*, 145 Cal. 686, [79 Pac. 350]; *Mendenhall* v. *Gray*, 167 Cal. 236, [139 Pac. 67].)

I am also satisfied that it is within the legislative power of the state, by appropriate laws, to attach to any personal relation created in this state, such as that of employer and employee, or master and servant, liabilities upon one party to such relation to the other, and corresponding rights relating thereto, in addition to the mutual liabilities and rights arising from such relation at common law. The provision of the Workmen's Compensation Law extending its benefits to employees injured outside of this state, where the contract of hire is made in this state, merely attaches to the relation created by such contract rights and liabilities additional to those arising under the common law, and it is, therefore, valid. This was decided by this court in *Western Indemnity Co.* v. *Pillsbury*, 170 Cal. 698, 699, [151 Pac. 398], and *Western Metal Supply Co.* v. *Pillsbury*, 172 Cal. 407, 415, [Ann. Cas. 1917E, 390, 156 Pac. 491].

I agree with the conclusion that the petitioner has the right to attack the validity of section 58 of the act.

These propositions are, in my opinion, decisive of the case. Upon other matters stated in the opinion of Mr. Justice Lennon in his argument upon these questions I prefer to express no opinion.

Angellotti, C. J., concurred.

WILBUR, J., Concurring.—I adhere to the views expressed in *Estabrook Co.* v. *Industrial Acc. Com.*, 177 Cal. 767, [177 Pac. 848]. I do not, therefore, agree with that portion of the opinion of Mr. Justice Lennon discussing that case and the rule of law which it announces. I concur with what is said by Mr. Justice Lennon in reference to the jurisdiction of the state of California. I concur in that portion of his opinion in which he bases the constitutionality of the statute upon the principle announced in *Estate of Johnson, supra.* I agree with the majority of the court in holding that, notwithstanding the language of the statute with reference to residents, by virtue of the federal constitution a nonresident of California, if a citizen of the United States,

is entitled to the same remedies as a resident, and for that reason the Industrial Accident Commission had jurisdiction of the complaint of a resident of California, and would also have jurisdiction of a similar complaint by a nonresident, and that there is, therefore, no such discrimination as is prohibited by the federal constitution.