[Civ. No. 5224.  Second Appellate District, Division One.—February 5, 1926.]

## VAN CAMP SEA FOOD COMPANY, INC. (a Corporation), Petitioner, v. F. M. NEWBERT et al., Respondents.

[1] FISH AND GAME—CAPACITY OF SARDINE CANNING PLANT—FUTURE REQUIREMENTS—DETERMINATION BY FISH AND GAME COMMISSION—ACT OF 1925—STATUTORY CONSTRUCTION.—Under the provisions of subdivision (a) of section 5 of the Act of May 23, 1925 (Stats. 1925, p. 595), the determination by the Fish and Game Commission of the capacity of a packing plant for canning sardines must be based upon the number of can-closing machines actually installed and ready to be used therein during the season immediately following the making of the application for such determination, and not upon the number of such machines which the applicant expected would be ready for operation at the opening of the season; and an order made by the commission based upon the number of can-closing machines to be used in the future is void.

[2] ID.—POWER TO DETERMINE CAPACITY—MANDAMUS.—The Fish and Game Commission cannot be required by *mandamus* to determine the number of can-closing machines to be used in the future by a sardine packing plant, such determination not being within its power under subdivision (a) of section 5 of the Act of May 23, 1925 (Stats. 1925, p. 595).

[3] ID.—PACKERS OF SARDINES—SPECIAL PRIVILEGES—CONSTITUTIONAL LAW.—That portion of subdivision (a) of section 5 of the Act of May 23, 1925 (Stats. 1925, p. 595), amending the act to conserve and regulate the fish supply of California, which gives to packers of sardines in one-pound oval cans the special privilege of using sardines for reduction purposes, unlawfully discriminates against other kinds of fish packers embraced within other provisions of the act and is unconstitutional.

[4] CONSTITUTIONAL LAW—VALIDITY OF STATUTES—CLASSIFICATION—DISCRIMINATORY PROVISIONS.—A classification other than constitutional, natural, or intrinsic, will fail to meet the generally accepted requirements for the validity of a statute which is attackable upon the ground that it lacks uniformity and that it is discriminative in its operation.

3.  Constitutionality and construction of statutes for prevention of waste of fish, note, 32 A. L. R. 1198.

4.  See 5 Cal. Jur. 829; 6 R. C. L. 378.

[5] ID.—INVESTIGATION BY LEGISLATURE — PRESUMPTIONS — COURTS.—
Where no reason appears for an attempted discrimination in a stat-
ute, the general rule that the legislature is presumed to have in-
vestigated the facts upon which it acts, and that its conclusion as
impliedly expressed in the statute must be respected by the courts,
cannot prevail.

[6] FISH AND GAME—ACT OF 1925—DISCRIMINATORY STATUTE—RIGHT
OF FISH AND GAME COMMISSION TO ATTACK—CONSTITUTIONAL LAW
—MANDAMUS.—In a *mandamus* proceeding against the Fish and
Game Commission to compel it to determine the capacity of a
packing plant for canning sardines, the Commission may question
the constitutionality of that part of subdivision (a) of section
5 of the Act of May 23, 1925 (Stats. 1925, p. 595), which gives
to packers of sardines in one-pound oval cans the privilege of
using sardines for reduction purposes.

[7] ID.—ORDER RECOGNIZING VALIDITY OF STATUTE—ESTOPPEL—AB-
SENCE OF SHOWING OF INJURY.—In such proceeding, the Fish and
Game Commission is not estopped from attacking the constitu-
tionality of that part of subdivision (a) of section 5 of the Act
of May 23, 1925 (Stats. 1925, p. 595), respecting the use of
sardines in reduction plants, because it had by a previous order
recognized the validity of the statute and had acted upon a pro-
vision therein by adopting its requirements with reference to giving
notice of a hearing on the question of a determination of the
capacity of the packing plant of petitioner, in the absence of a
showing that some injury or injustice has resulted to petitioner by
reason thereof.

(1) 26 C. J., p. 636, n. 23.    (2) 26 C. J., p. 636, n. 23; 38 C. J.,
p. 691, n. 9.    (3) 26 C. J., p. 625, n. 6.    (4) 12 C. J., p. 1130, n. 25.
(5) 12 C. J., p. 800, n. 68 New.    (6) 12 C. J., p. 768, n. 20, p. 769,.
n. 28.    (7) 12 C. J., p. 770, n. 53 New.

PETITION for a Writ of Mandate to compel the Fish and
Game Commission to determine the capacity of a sardine
canning plant.   Demurrer to petition sustained; writ denied.

The facts are stated in the opinion of the court.

William A. Alderson and Fredericks & Hanna for Peti-
tioner.

B. D. Marx Greene for Respondents.

5.   See 5 Cal. Jur. 833; 6 R. C. L. 385.

HOUSER, J.—This is a petition for a writ of mandate to be directed to the respondents in their capacity as the Fish and Game Commission of the State of California, commanding them to make "a determination and order determining that the capacity of the packing plant of petitioner for canning sardines is 18,000 tons per month, and allowing petitioner 4500 tons of sardines per month to be used in its reduction plant, being twenty-five per cent of the said capacity of the packing plant of petitioner, without condition or qualification."

From the petition it appears that for several years last past petitioner has been actually engaged in the business of packing sardines; that at the time of filing the petition herein petitioner had installed in its packing plant thirty can-closing machines for one-pound oval cans of sardines and other equipment necessary for canning sardines to the capacity of said closing machines; that some time prior to the filing of the petition herein, to wit, on the twenty-ninth day of August, 1925, petitioner filed with respondents as members of the Fish and Game Commission of the State of California an application under the provisions of subdivision (a) of section 5 of an act entitled "An act to amend an act entitled 'An act to conserve the fish supply in California by empowering the Fish and Game Commission to regulate and control the handling of fish or other fishery products for the purpose of preventing deterioration or waste,' " etc.    (Stats. 1925, p. 595) ; that by the terms of said application petitioner represented that it was and had been prior thereto actually engaged in packing sardines, and that it would be so actually engaged during the season for packing sardines of 1925–1926; that during the said season petitioner *would have installed* in. its said packing plant thirty can-closing machines for one-pound oval cans of sardines intended to be used in said packing plant during the said season, and other equipment necessary for canning said sardines to the capacity of said closing machines, installed and ready for operation and intended to be operated during said season; that the monthly capacity of the packing plant of petitioner for canning sardines was and would be during the season of 1925–1926, 18,000 tons of sardines; that petitioner requested that it be allowed, to be used at its reduc-

tion plant, 4,500 tons of sardines for each calendar month, being twenty-five per cent of the monthly capacity of said packing plant; that thereafter, and following a hearing upon said application, the respondents, as such Fish and Game Commission, made an order determining the capacity of the canning plant of petitioner by which there was made to petitioner, "while actually engaged in packing sardines a monthly allowance of sardines to be used in its reduction plant of 4,500 tons for each calendar month, based upon its aforesaid canning capacity of 18,000 tons per month, and being twenty-five per cent of the monthly capacity of the packing plant.

"This order is made subject to the regulations required by the Fish and Game Commission's General Order No. 1, which order is made a part of this order."

"General Order No. 1," referred to by the said order of determination by the respondent Fish and Game Commission, contained, among other things, the following:

"In order to determine whether a packer is actually engaged in packing sardines, this commission will require that for each ton of sardines received by a packer during a calendar month he shall produce 15 cases of one pound ovals (48 cans to the case), or the equivalent if other size cans are used."

It is from the conditions contained in "General Order No. 1," and especially that part thereof which has just been quoted herein, that petitioner seeks relief. Its contention is that in the hearing before the respondents as such Fish and Game Commission, to which reference has been had, respondents have and had authority to determine the capacity only of the plant of petitioner, and that the conditions attached thereto, known as "General Order No. 1," were in excess of the authority conferred by the terms of the act upon respondents as such Fish and Game Commission.

The respondents, however, have demurred to the petition on the grounds that it does not state facts sufficient to constitute a cause of action, or sufficient to authorize the issuance of a writ of mandate in said matter.

The act authorizes the Fish and Game Commission to determine the monthly capacity of any packer of sardines by taking into consideration and basing its findings upon:

"The number of can-closing machines for one pound oval cans of sardines actually installed in said plant and ready for and intended to be used therein during the season immediately following the making of the application hereinafter mentioned; provided, that the other equipment of said plant necessary for canning to the capacity of said closing machines is likewise installed and ready for operation. For each closing machine so installed the fish and game commission shall make a monthly allowance of sardines to be used in the reduction plant of one hundred fifty tons for each calendar month."

Respondents direct attention to the fact that the application by the petitioner to the respondents for the order determining the monthly capacity of the packing plant belonging to the petitioner contained, not a statement of "the number of can-closing machines for one pound oval cans of sardines *actually installed* in said plant and *ready* for and intended to be used therein during the season immediately following the making of the application," but, to the contrary, that petitioner contented itself with a representation merely of the number of can-closing machines which it expected would be ready for operation at the time the season for canning sardines would open. Furthermore, in the same connection, respondents point to the order made by the Commission which contains the findings:

"1. That applicant *will have installed* in its said plant thirty (30) can closing machines for one pound oval cans of sardines intended to be used therein during the season 1925–1926;

"2. That the other equipment of said plant necessary for canning to the capacity of said closing machines *will likewise be installed* and ready for operation."

[1] It is clear that the powers of the Fish and Game Commission in the premises are derived solely from the provisions of the act under consideration. Its authority to determine the capacity of any fish-canning plant is found within the terms of that portion of the act heretofore quoted herein, that "the fish and game commission must take into consideration and base its findings upon the following facts namely; the number of can-closing machines . . . *actually installed* . . . and *ready* for and intended to be used" in

76 Cal. App.—29

the packing plant of the petitioner during the season immediately following the application for the order fixing the capacity of the petitioner. With reference to the packing capacity of a petitioner, no authority is vested in the Commission to determine what reasonably may be expected to happen in the future. It may "take into consideration and base its findings" solely upon what actually exists at the time the application is made. Were it otherwise, an unscrupulous packer might make unwarranted representations regarding his future expectations in the way of what machinery he expected to install, and thereby procure an order determining the monthly capacity of his packing plant far in excess of that which it would be possible for him otherwise to obtain, which result would be out of harmony with the evident purpose of the statute. By recognizing the authority of the Commission under the facts of the instant case to fix the packing capacity of an applicant upon its representation of what it reasonably expected would be its equipment at the beginning of the canning season would be a misconstruction of the plain language of the act and a precedent for the exercise of unlimited discretionary power in the Commission in that regard. The words of the statute are so precise that there can be no misunderstanding of their meaning. They authorize a certain finding by the Commission based upon certain existing material facts, and none other. An order made by the Commission which does not rest upon such authority is manifestly a nullity; and it appearing by the representations contained within the petition of the applicant, as well as in the order made by the Commission, that the order in the premises was not founded upon such facts as the Commission was authorized to consider, it follows that the order in question was and is void and of no effect. [2] Consequently, the Commission cannot be required by order of this court to perform an act not prescribed by the statute as being within its powers.

[3] The act under consideration contains no provision giving to any packer of sardines other than one packing his product in one-pound oval cans the right to have the packing capacity of his plant determined by the Commission, to the end that the monthly allowance of sardines to be used in a reduction plant for fertilizer purposes may be fixed by

order of the Commission.    Because of such alleged discrimination it is contended by respondents that that portion of the act which gives to packers of sardines in one-pound oval cans the special privilege of using sardines for reduction purposes is unconstitutional.

Section 4 (b) of the act defines a packer as ''any person, firm, association or corporation using fish by canning, or preserving by the common method of drying, salting or smoking.''    And section 5 (a), in part, provides: ''It shall be lawful for a packer of sardines, actually engaged in packing sardines, to take and use in a reduction plant in each calendar month, sardines to the amount of twenty-five per cent of the monthly capacity of the packing plant; . . . '' Then follows in the act the provision heretofore quoted herein by which the Commission is authorized to determine the packing capacity of the plant of any packer by taking into consideration the number of can-closing machines for one-pound oval cans of sardines actually installed and ready for and intended to be used in said plant, etc.

It will be noted that the act specifically provides for several different kinds of packers, namely: the canner, the dryer, the salter, and the smoker.    Evidence received by the referee appointed by this court discloses the additional fact that there are at least five different sized cans used by the canner of sardines, to wit, the one-pound oval, the half-pound oval, the half-pound square, the quarter-pound square, and the six-ounce tall cans.    Of the several kinds of packers of sardines the canner is the only one who is permitted to have the packing capacity of his plant determined in order that the monthly allowance of sardines to be used in a reduction plant may be fixed by the Commission; and of the canners, the only one who is given that right is the packer using one-pound oval cans for his product.

[4]    So much heretofore has been written on the question of uniformity as applied to the persons upon whom a given statute will act or be effective that it is considered unnecessary to devote any attention to any elaboration.    It may suffice, therefore, to note that in principle a classification other than constitutional, natural, or intrinsic will fail to meet the generally accepted requirements for the validity of a statute which is attackable upon the ground that it lacks uniformity

and that it is discriminative in its operation. Considering, then, the several essential prerequisites in the attempted classification contained within the provisions of the statute under consideration, it may be said that no claim is made that a classification of a canner of sardines, as distinguished from either a dryer, a salter, or a smoker of such fish, is to be found within any of the provisions of the constitution of this state; which implied concession leaves for determination whether the statutory segregation is one which for the purposes of the act is either natural or intrinsic.

The evidence produced before the referee of this court shows that in the conduct of his packing plant each of the several kinds of packers, as defined by the statute, has a very considerable amount of offal and other otherwise waste material derived from the ordinary operation of his business which is fit for reduction purposes only, from the sale of which, together with certain by-products thereof, is afforded the principal source of revenue and profit to the packer. There is, however, no natural distinguishing feature between the several businesses of the different kinds of packers so far as the reduction end of the industry is concerned. Each of the packers produces practically the same quantity of offal from an equal quantity of sardines, and the number or poundage of fish unfitted for any reason for the use of the canner for human consumption would be practically identical with those likewise unsuitable for the use of either the dryer, the salter or the smoker of sardines. Any individual packer, of whatever kind, for the purpose of producing fertilizer from the operation of his packing plant must necessarily depend upon a source of supply identical in all respects with that relied upon by each of the other several kinds of packers defined by the statute. There is, then, neither a natural nor an intrinsic distinction or difference between any one kind of packer and any other kind of packer, so far as the operation of the statute as affecting the reduction of sardines in a fish-packing plant is concerned. The effect must be that the statute unlawfully discriminates in favor of the canner of sardines as against each of the other kinds of packers of such fish.

In addition to such general discrimination, the statute is likewise objectionable for the reason that it unjustly favors the canner of sardines using one-pound oval cans for his

product as against each of the canners who may use any or all the other sizes of cans for canning his fish. No reason has been suggested why a canner using the half-pound oval can, or the half-pound square, or the quarter-pound square, or the six-ounce tall can should be deprived of the right to have the capacity of his packing plant determined by the Commission, to the end that he, too, may be given the right to manufacture fertilizer from the offal of the fish which he cans and likewise use such other fish for reduction purposes as may not be fit for other practical use.

[5] No reason whatsoever being discoverable for the attempted discrimination, the general rule that the legislature is presumed to have investigated the facts upon which it acts, and that its conclusion as impliedly expressed in the statute must be respected by the courts, cannot prevail.

[6] The contention by petitioner that because respondent is not an aggrieved party to the proceeding it is in no position to question the constitutionality of that part of the statute under consideration is untenable. In the case of *Quong Ham Wah Co.* v. *Industrial Acc. Com.,* 184 Cal. 26 [12 A. L. R. 1190, 192 Pac. 1021], it is held that the rule suggested by petitioner here is subject to the exception that where no member of the class against whom the discrimination exists is in a position to raise the constitutionality of the statute, any person affected by the application of the statute may urge its unconstitutionality. The purpose of the act in question, as partly expressed in its title, is "to regulate and control the handling of fish or other fishery products." By its terms "no person shall use any fish except fish offal in a reduction plant, except of the species, in the manner and to the amount allowed by the provisions of this act." It would thus appear that, except as to the use of fish offal for reduction purposes, no packer of fish would be permitted to lawfully operate a reduction plant in any manner other than as is provided by the statute, the essential provision of which being as heretofore quoted herein. It is, therefore, apparent that if at the instance of a packer of sardines, other than a canner using one-pound oval cans, the unconstitutionality of the supposedly objectionable provisions of the statute should be established, the result would be of no benefit to such packer. His act would merely bring about the destruction of the discriminatory provisions of the statute, but at

the same time would gain the packer no advantage. In the case to which reference has just been had (184 Cal. 26, 31 [12 A. L. R. 1190, 192 Pac. 1021]), in speaking of the effect of a situation somewhat similar. to the facts here presented, the court quoted with approval from the case of *Greene* v. *State,* 83 Neb. 84 [131 Am. St. Rep. 626, 119 N. W. 6], wherein, among other things, it is said: "If we apply to such a law the rule that its constitutionality would only be considered when the objection was made by a party discriminated against, there could be no objection to its validity. When such a law is sought to be enforced against any person, whether belonging to the classes discriminated against or not, it should be declared void."

[7] The additional point advanced by petitioner is that because respondents, as such Fish and Game Commission, have heretofore recognized the validity of the statute and have acted upon a provision therein by adopting its requirements with reference to giving notice of a hearing on the question of a determination of the capacity of the packing plant of the petitioner, and in connection therewith have issued an order fixing the packing capacity of petitioner, respondents are estopped from attacking the statute on the ground that it is unconstitutional.

In the case of *Allen* v. *Hance,* 161 Cal. 189, 196 [118 Pac. 527, 529], it is said: "Whatever may have worked the estoppel, whether the estoppel rests in judgment, deed, contract, or *in pais,* in its essence it amounts to but this, that a man is forbidden to show the existence of a fact because by his past conduct, his declarations, his agreement, his deed or a judgment, it would work an injustice and an injury to his adversary to permit him to do so." (See, also, *Frank* v. *Crescent Wharf etc. Co.,* 50 Cal. App. 272 [195 Pac. 79].)

In establishing the claimed estoppel of respondents it should appear that some injustice or some injury has resulted to petitioner by reason of the fact that, based upon an application initiated by petitioner, respondents set a time for hearing the application and thereafter made an order determining the packing capacity of the business of petitioner. Petitioner at least impliedly requested that respondents do the things which they did, and it is not apparent in what manner petitioner has been prejudiced by such

conduct on the part of the respondents. But if any injury or injustice has resulted to petitioner by reason of the acts of respondents in the premises, such injury was brought about at the instigation of petitioner, and in such circumstances it should not be heard to complain.

The demurrer to the petition is sustained and the writ discharged.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on March 5, 1926.